ALBERTSON'S, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 10439-87.          Filed October 9, 1990.

*Robert S. Erikson, Edwin V. Apel, Jr., Cathy R. Silak,* and *David A. Channer,* for the petitioner.*

*Joyce E. Brit, Julia M. Dewey,* and *Virginia Draper,* for the respondent.

---

*Brief amicus curiae was filed by Michael J. Jones as attorney for the Northwestern Mutual Life Insurance Co.

RUWE, *Judge:** Respondent determined a deficiency in petitioner's Federal income tax in the amount of $718,936 for fiscal year ending February 3, 1983. Originally, three issues were presented for decision: (1) The investment tax credit issue; (2) the WIN credit issue; and (3) the interest/deferred compensation issue. By an order dated December 27, 1988, this Court severed the investment tax credit issue from the other issues and decided it in petitioner's favor. See *Albertson's, Inc. v. Commissioner,* T.C. Memo. 1988-582. Supplemental briefs with respect to the WIN credit and the interest/deferred compensation issues were ordered filed. We subsequently separated the two remaining issues and decided the WIN credit issue in respondent's favor. See *Albertson's, Inc. v. Commissioner,* T.C. Memo. 1990-153. This opinion involves the interest/ deferred compensation issue. Specifically, we address whether the amounts designated as interest under petitioner's deferred compensation arrangements are deductible in the year accrued. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference.

Petitioner, a Delaware corporation, had its principal place of business in Boise, Idaho, at the time the petition in this case was filed. During the year in issue, petitioner operated over 400 retail food and drug stores in the Western, Southern, and Southeastern United States. Petitioner is an accrual basis taxpayer.

Prior to the fiscal year in issue, petitioner established nonqualified deferred compensation arrangements (DCA's) for eight "key" executives (employee DCA's) and for one outside member of its board of directors (director DCA). The executives and the director participating in the DCA's will

---

*By Order of the Chief Judge, this case was reassigned to Judge Robert P. Ruwe for purposes of opinion.

be referred to as DCA participants. The DCA's were unfunded and represented the unsecured contractual obligations of petitioner to pay a specified sum, determined in accordance with the terms of each DCA, to each DCA participant at or after a specified time. The time specified was retirement, termination of employment, or, in the case of the outside director, age 72. Petitioner's purpose in establishing the DCA's and offering them to its executives and directors was to attract and retain the services of qualified persons for those positions.

Under the DCA's, petitioner and the DCA participants agreed to defer payments for future personal services the DCA participants would otherwise have been entitled to receive in the year they performed said services. The agreement was struck as a result of arm's-length negotiations conducted prior to the year personal services were performed. Each participant in an employee DCA deferred either a specified portion of his or her future salary or an annual bonus, or both. The participant of the director DCA deferred 100 percent of his monthly retainer fees and board and committee meeting fees.

Prior to the beginning of a fiscal year of petitioner, each DCA participant could elect not to participate in his or her respective arrangement for that year. If a DCA participant elected not to participate, his or her compensation for the year would not be deferred and would actually be paid to him or her as earned.

Petitioner maintained bookkeeping accounts to calculate the deferred personal service compensation of each DCA participant. The accounts for each DCA participant reflected the amount of compensation that was originally deferred plus an amount designated as "interest." For the year in issue, the provisions defining deferred compensation that were contained in the employee DCA's were as follows:[1]

3. DEFERRED COMPENSATION:

3.1 The COMPANY agrees to defer payment of certain compensation earned by EMPLOYEE during each fiscal year, such deferred compensation to be paid to EMPLOYEE after EMPLOYEE'S employment is

---

[1]The DCA entered into by petitioner and Paul W. Mouser varies somewhat, but contains substantially similar language.

terminated. The compensation to be deferred in each fiscal year shall be as set forth in subparagraphs (a) and (b) below:

(a) The sum of $_____ . This amount will be prorated for any partial fiscal year upon retirement or termination.

(b) The bonus earned by EMPLOYEE for such fiscal year pursuant to any bonus plan or plans then in effect unless EMPLOYEE, by written notice to the Secretary of the COMPANY prior to the beginning of any fiscal year, elects to have only a portion of such bonus deferred for such fiscal year. In such event, the portion of such bonus which EMPLOYEE elects not to be deferred shall be paid in accordance with the provisions of the bonus plan.

3.2 The COMPANY agrees to pay to EMPLOYEE a further sum of money equal to the amount of interest accrued which shall be calculated by applying a rate of interest to the total accumulated amount of deferred compensation including accrued interest compounded monthly. The rate to be used will be the weighted average of the COMPANY'S long term borrowing rate for that current fiscal year.

3.3 As used in Section 3.2 above, "total accumulated amount of deferred compensation" means compensation deferred pursuant to previous deferred compensation agreements between the COMPANY and EMPLOYEE (including phantom stock agreements) as well as this agreement.

3.4 For purposes of this agreement a "year" is defined as a "fiscal year" coincident with the COMPANY'S fiscal year.

With respect to the director's DCA, the interest component was also compounded monthly, but was determined by reference to the Wall Street Journal and the rate there quoted as being paid by major banks on new issues of negotiable certificates of deposit in amounts of $1 million or more. The DCA participants' rights to receive payment under the DCA's could not be commuted, encumbered, assigned, or otherwise disposed of.

For taxable years prior to the year in issue, petitioner did not claim a deduction with respect to its DCAs' interest component unless a deduction was permitted by section 404(a) by reason of the amount actually being paid and included in the gross income of the recipient.[2] On June 14, 1982, petitioner filed with respondent a request for a change of accounting method with respect to its DCAs' interest component. Petitioner requested it be allowed to account for

---

[2]As discussed more fully *infra*, sec. 404(a)(5) and (d) prohibits an employer from deducting amounts of deferred compensation accrued under a nonqualified DCA until those amounts are included in the plan participant's gross income. All participants in petitioner's DCA's (DCA participants) were cash basis taxpayers and would recognize as gross income the amounts accruing under their DCA's in the year those amounts are actually or constructively received.

the interest component by deducting it in the year accrued rather than the year paid. On August 26, 1983, respondent issued a letter permitting petitioner to change, as requested, its method of accounting for its DCAs' interest component. The change year involved was the year in issue, petitioner's fiscal year ending February 3, 1983.

Relying on the permission granted, petitioner compounded and accrued on a monthly basis the interest component of the DCA's with respect to each DCA participant's accumulated account balance. Petitioner treated this amount separately as an "interest expense" for purposes of its fiscal year 1983 consolidated earnings statement. On its Federal income tax return for the year in issue, petitioner claimed an interest expense deduction in the amount of $667,142 for the DCAs' interest component accruing during the year.

By notice of deficiency dated March 6, 1987, respondent determined that his August 26, 1983, letter permitting petitioner an accounting method change would be revoked under section 7805(b) retroactive to the date of its issuance. Based on his retroactive revocation, respondent disallowed the deduction petitioner claimed with respect to the DCAs' interest component for the year in issue because no interest was actually paid during the year.

As originally presented for trial, the interest/deferred compensation issue involved three questions:

(1) Whether respondent acted properly in revoking retroactively his permission for petitioner to change its method of accounting for the DCAs' interest component (the retroactive revocation question);

(2) Whether the DCAs' interest component actually constitutes "interest" within the meaning of section 163; and

(3) If the amounts in question are interest, whether section 404(a)(5) and (d) proscribes their deduction.

When called for trial on May 23, 1988, the Court, on its own motion, severed the retroactive revocation question from the remainder of this case and took it under advisement. Thereafter, a trial was held and evidence was presented only with respect to the other issues remaining for decision. At the trial's conclusion, this case stood submitted.

Upon further consideration, the Court decided to take evidence on the retroactive revocation question so it could be decided along with all other issues previously submitted. Accordingly, trial of the retroactive revocation question was scheduled for December 18, 1989. On that date, a pretrial conference was held with counsel for petitioner and respondent. During the conference, the parties' positions with respect to the retroactive revocation question were discussed at length. Petitioner's counsel averred petitioner, after further consideration, did not desire to pursue any relief with respect to the retroactive revocation question. Petitioner's counsel was given an opportunity to again consult with petitioner. When this case was recalled from the calendar later in the day, petitioner's counsel read into the record a statement concerning petitioner's understanding of the consequences of its abandonment of the retroactive revocation question. The parties then filed a stipulation of settled issues. By these actions, petitioner effectively conceded the retroactive revocation question scheduled to be tried.

## OPINION

We must now decide the remainder of the interest/deferred compensation issue. Specifically, we address whether the amount designated as interest under the DCA's is "interest" within the meaning of section 163. If it is interest, we must also decide whether it is deductible in the year accrued.

Respondent argues that the amount designated as interest under the DCA's is not interest. Instead, respondent contends that the amounts in question represent additional deferred compensation for personal services, deductible only as permitted by section 404(a)(5) or (d). Respectively, that section permits deduction of deferred compensation only when the compensation is includable in the income of an employee or independent contractor. Respondent further argues that even if the amounts in question are found to constitute interest within the meaning of section 163, section 404(a)(5) and (d) still controls when these amounts may be properly deducted.

Petitioner concedes that if the amounts in issue represent compensation for personal services, section 404(a)(5) and (d)

controls, and the amounts in question are deductible only in the year they are actually paid to the DCA participants. Petitioner argues, however, that the amounts in question are not deferred compensation for personal services. Instead, petitioner contends that these amounts represent interest within the meaning of section 163. Furthermore, petitioner asserts that if the amounts in question constitute interest, section 404(a)(5) and (d) is inapplicable and the interest is deductible as accrued.

Our first inquiry is whether the amounts in question represent interest or compensation for personal services. In answering this question, we must consider all relevant facts and circumstances and make our determination based on the substance of the transaction and not the form in which it is cast. *Commissioner v. Court Holding Co.,* 324 U.S. 331, 334 (1945); *Gregory v. Helvering,* 293 U.S. 465 (1935).

Interest is "the amount which one has contracted to pay for the use of *borrowed* money." (Emphasis added.) *Old Colony Railroad Co. v. Commissioner,* 284 U.S. 552, 560 (1932). Interest is also commonly defined as "compensation for the use or *forbearance* of money." (Emphasis added.) *Deputy v. du Pont,* 308 U.S. 488, 498 (1940). Interest is the equivalent of "rent" for the use of funds. *Dickman v. Commissioner,* 465 U.S. 330, 339 (1984). Implicit in these three definitions of interest is the concept that interest is a payment for the use of money that the lender had the legal right to possess, prior to relinquishing possession rights to the debtor.[3]

One of the principal advantages of deferred compensation plans is that participants are allowed to defer taxes on the deferred compensation until the year of actual receipt. Contracts deferring the right to receive compensation that are entered into *prior* to the performance of the services for

---

[3]The terms borrow, forbearance, and rent are commonly defined as follows:

Borrow. To solicit and receive from another any article of property, money or thing of value with the intention and promise to repay or return it or its equivalent. If the item borrowed is money, there normally exists an agreement to pay interest for its use. In a broad sense the term means a contract for the use of money. * * * [Black's Law Dictionary 167 (5th ed. 1979).]

Forbearance. Act by which creditor waits for payment of debt due him by debtor after it becomes due. * * * A delay in enforcing rights. * * * [Black's Law Dictionary 580 (5th ed. 1979).]

Rent. Consideration paid for use or occupation of property. * * * [Black's Law Dictionary 1166 (5th ed. 1979).]

which the compensation is being paid have been recognized for purposes of determining when income is received for Federal income tax purposes. In such cases, the contract controls the employee's right to receive payment. It is the absence of any legal right to receive compensation in the year in which the DCA participants rendered services that precludes recognition of income in that year. *Basila v. Commissioner,* 36 T.C. 111, 116-117 (1961); *Gann v. Commissioner,* 31 T.C. 211, 217 (1958); *Oates v. Commissioner,* 18 T.C. 570, 585 (1952), affd. 207 F.2d 711 (7th Cir. 1953).[4]

The participants in petitioner's deferred compensation plans agreed to defer either a portion of their salary, or a bonus, or both. (The plan for the corporate director deferred 100 percent of his monthly retainer fee, board meeting fees, and committee meeting fees.) They entered into these agreements prior to rendering any services for petitioner and, therefore, never had a legal right to be paid any of the deferred compensation in the year they rendered services. Likewise, petitioner was not under, and never had been under, any legal requirement to pay the deferred amounts to the DCA participants in the year they performed services or during any subsequent year prior to their retirement, termination, or attainment of a specified age.[5] Petitioner was always the "owner" of the money involved in these plans. See *Goldsmith v. United States,* 218 Ct. Cl. 387, 397 (1978).

The amounts recorded in the bookkeeping accounts as "interest" do not represent payments made by petitioner for the use of money "borrowed" from its employees and director. Nor do these amounts constitute liabilities owed to the DCA participants for the "forbearance" of money whose payment had become due. In determining the effect of a transaction for income tax purposes, formalities such as nomenclature and bookkeeping entries are not controlling. *Gregory v. Helvering, supra; Doyle v. Mitchell Bros. Co.,* 247 U.S. 179, 187 (1918). The important consideration is

---

[4]See Rev. Rul 60-31, 1960-1 C.B. 174, modified by Rev. Rul. 64-279, 1964-2 C.B. 121 and Rev. Rul. 70-435, 1970-2 C.B. 100.

[5]It cannot be argued that the DCA participants were in "constructive receipt" of the deferred compensation. There can be no constructive receipt until the contractual conditions giving rise to a present right to payment are met. *Basila v. Commissioner,* 36 T.C. 111, 115-118 (1961). See *Cohen v. Commissioner,* 39 T.C. 1055, 1063 (1963).

substance, not form. *Wood v. Commissioner,* 93 T.C. 114, 120 (1989); *U.S. Asiatic Co. v. Commissioner,* 30 T.C. 1373, 1381 (1958). The fact that certain amounts are described as interest by the parties to an agreement and are calculated by applying a percentage rate per annum to some principal amount does not mean that the amounts will be deductible as interest for income tax purposes. *Autenreith v. Commissioner,* 115 F.2d 856, 858 (3d Cir. 1940), affg. 41 B.T.A. 319 (1940).

DCA participants never had any legal basis to demand payment of the deferred amounts, and petitioner never had an obligation to pay deferred compensation in the year in issue. Petitioner could not have "borrowed" something from the DCA participants that the DCA participants never had the right to possess. One cannot forgo something to which one *never* had a right. One cannot lend that which one *never* had a right to possess, and petitioner cannot *borrow* money that it *always* had the right to possess. Petitioner cannot properly characterize its accruals as "interest."[6]

Petitioner's purpose in offering to defer compensation was to remain competitive within the executive and director recruitment marketplace. Executives and directors are paid compensation in return for services and are free to enter into contracts specifying the timing and amounts of compensation.[7] The amount of deferred compensation to be paid an employee can, and often is, related to the date on which the employee is entitled to payment. Under such an arrangement, the time value of money affects the amount of compensation to be paid under the contract. B. Bittker & L. Lokken, Federal Taxation of Income, Estate, and Gifts, par. 60.2.1, p. 60-10, 60-11 (2d ed. 1990). The fact that these same economic considerations are used to determine interest

---

[6]Were we to accept the rationale that deferred compensation that an employee never had a present right to receive is, in substance, the same as a loan from the employee to the employer, it would seem to follow that such a characterization would be required whether or not the deferred compensation plan included an "interest" factor. Using this approach, it would logically follow that a deferred compensation arrangement that had no interest factor would be treated as an interest-free loan within the terms of sec. 7872, and that the employee would have to report an amount representing interest as taxable income during each year of deferral. Secs. 7872 and 1272. An amount representing taxable interest income would thus be imputed to the employee even though the employee never had a right to receive the principal amount of the deferred compensation and was not required to recognize the principal amount as taxable income. Surely, this was not a result desired by Congress.

[7]We doubt that the opportunity to lend one's employer money at market rates would normally be considered a recruitment device.

rates cannot transform a portion of the deferred payment into "interest." Likewise, an amount computed on the basis of interest rates does not automatically transform the amount being computed into "interest." For example, the fact that the value of a gift resulting from an interest-free or below-market loan is measured by interest is not the same as actually charging or paying interest. *Estate of Arbury v. Commissioner*, 93 T.C. 137 (1989). "[A] donor who loans money in an interest-free demand loan has not charged interest on that loan; nor has the donee paid interest. Rather, the donor has simply made a gift to the donee, the value of which will be determined by the interest rate." *Cohen v. Commissioner*, 910 F.2d 422, 428 (7th Cir. 1990), affg. 92 T.C. 1039 (1989). For the same reasons, a deferred compensation plan that uses interest rates to compute the amount of deferred compensation plan benefits does not result in the accrual of deductible "interest."[8]

In holding that petitioner incurred no liability for "interest," we do not mean to inply that petitioner had not incurred a bona fide obligation to compensate the DCA participants. However, as the Supreme Court stated in *Deputy v. du Pont*, 308 U.S. at 497, "although an indebtedness is an obligation, an obligation is not necessarily an 'indebtedness' within the meaning of sec. 23(b) [the predecessor of sec. 163]." In *Deputy v. du Pont, supra*, the taxpayer had borrowed shares of stock and had agreed to return the shares within 10 years and to pay the lender an amount equivalent to all dividends on the stock during the period of the loan, plus any taxes incurred by the lender as a result of the arrangement. The taxpayer sought to deduct these latter amounts as interest. In holding that the amounts in issue were not interest, the Court stated:

In *Old Colony Railroad Co. v. Commissioner*, 284 U.S. 552, this Court had before it the meaning of the word "interest" as used in the comparable provision of the 1921 Act (42 Stat. 227). It said, p. 560, "... as respects 'interest,' the usual import of the term is the amount

---

[8]Bittker gives several examples showing the economic and tax impact of deferred compensation plans on the employer and employee. In the examples, the amount of the employee's deferred benefits is calculated by using prevailing interest rates. In each of the examples, it is assumed, without discussion, that the "interest factor" is not deductible until the benefits are actually paid to the employee. B. Bittker & L. Lokken, Federal Taxation of Income, Estates, and Gifts, par. 60.2.1, p. 60-11, 60-12 (2d ed. 1990).

which one has contracted to pay for the use of borrowed money." It there rejected the contention that it meant "effective interest" within the theory of accounting or that "Congress used the word having in mind any concept other than the usual, ordinary and everyday meaning of the term." p. 561. It refused to assume that the Congress used the term with reference to "some esoteric concept derived from subtle and theoretic analysis." p. 561.

We likewise refuse to make that assumption here. It is not enough, as urged by respondent, that "interest" or "indebtedness" in their original classical context may have permitted this broader meaning. We are dealing with the context of a revenue act and words which have today a well-known meaning. In the business world "interest on indebtedness" means compensation for the use or forbearance of money. * * *

[*Deputy v. du Pont, supra* at 497-498. Fn. refs. omitted.]

For reasons previously explained, petitioner did not borrow money from the DCA participants. At the time the DCA's were entered into, the DCA participants had no right to money which could be the subject of their forbearance. After they performed services called for by the DCA's, they still had no money or immediate right to receive money which could have been the subject of their forbearance during the year in issue. Rather, the amounts accrued as "interest" were an integral part of the method used by petitioner to calculate the total amount of deferred compensation to be paid to the DCA participants. As compensation, deductibility is governed by the provisions of section 404 relating to employee benefit plans.

Employers may take immediate deductions for contributions actually made to "qualified plans." Strict requirements must be met to achieve qualified status. The most significant of these requirements relate to the funding of benefits, minimum coverage, prohibitions against discrimination, limitations on the benefits which may accrue to participants, and prohibitions against self-dealing. Secs. 401(a), 410, 411, 412, 415, and 4975. Qualified deferred compensation arrangements are subject to funding requirements imposed under the Internal Revenue Code and the Employee Retirement Income Security Act of 1974 (ERISA). Secs. 404(a) and 412; 29 U.S.C. sec. 1082 (1988). An employer that contributes to a qualified plan must pay the contributions to a trustee under a trust arrangement or to an insurance company that issues an annuity contract with respect to the plan. With respect to the requirement in

section 404(a) that there be an actual payment, the Supreme Court has stated:

> This accords, also, with the apparent policy behind the statutory provision, namely, that an objective outlay-of-assets test would insure the integrity of the employees' plan and insure the full advantage of any contribution which entitles the employer to a tax benefit. [*Don E. Williams Co. v. Commissioner*, 429 U.S. 569, 579 (1977). Fn. ref. omitted.]

Contributions to qualified plans are held and invested by the trustee or insurance company until the time of distribution to the employee. The assets contributed to the trustee or insurance company cease to be assets of the employer and are not subject to the debts, obligations, and creditors of the employer. The income earned on these assets is not taxable to either the trustee, the insurance company, or the employer, and the employee incurs no tax as a result of participation in a qualified plan until the time benefits are received.

Under section 404, compensation paid or accrued pursuant to a nonqualified plan is not deductible until includable in the income of the plan participants.[9]

Prior to the Revenue Act of 1942, deferred compensation was deductible under section 23(a) as an ordinary and

---

[9]SEC. 404. DEDUCTION FOR CONTRIBUTIONS OF AN EMPLOYER TO AN EMPLOY-EES' TRUST OR ANNUITY PLAN AND COMPENSATION UNDER A DEFERRED-PAYMENT PLAN.

(a) GENERAL RULE.—If contributions are paid by an employer to or under a stock bonus, pension, profit-sharing, or annuity plan, or if compensation is paid or accrued on account of any employee under a plan deferring the receipt of such compensation, such contributions or compensation shall not be deductible under section 162 (relating to trade or business expenses) or section 212 (relating to expenses for the production of income); but, if they satisfy the conditions of either of such sections, they shall be deductible under this section, subject, however, to the following limitations as to the amounts deductible in any year:

    *      *      *      *      *      *      *

(5) OTHER PLANS.—If the plan is not one included in paragraph (1), (2), or (3), in the taxable year in which an amount attributable to the contribution is includible in the gross income of employees participating in the plan, but, in the case of a plan in which more than one employee participates only if separate accounts are maintained for each employee.

    *      *      *      *      *      *      *

(d) DEDUCTIBILITY OF PAYMENTS OF DEFERRED COMPENSATION, ETC., TO INDEPENDENT CONTRAC-TORS.—If a plan would be described in so much of subsection (a) as precedes paragraph (1) thereof (as modified by section (b)) but for the fact that there is no employer-employee relationship, the contributions or compensation—

(1) shall not be deductible by the payor thereof under section 162 or 212, but

(2) shall (if they would be deductible under section 162 or 212 but for paragraph (1)) be deductible under this subsection for the taxable year in which an amount attributable to the contribution or compensation is includible in the gross income of the persons participating in the plan.

necessary business expense in the year it was paid or incurred. See *Oxford Institute v. Commissioner,* 33 B.T.A. 1136 (1936). Payments made to qualified plans were also deductible under section 23(p). *Tavannes Watch Co. v. Commissioner,* 176 F.2d 211 (2d Cir. 1949), revg. 10 T.C. 544 (1948). Because of considerable abuse, Congress amended section 23(p) of the 1939 Code in 1942. Section 23(p), as amended in 1942, expanded the types of qualified plans which were covered by the provision, and for the first time included nonqualified deferred compensation plans. Under section 23(p), no deductions were allowed until payments were actually made, regardless of whether or not an employer was a cash basis or an accrual basis taxpayer. Sec. 23(p)(1); *New York Post Corp. v. Commissioner,* 40 T.C. 882, 886-887 (1963). The committee reports indicate that Congress intended to make section 23(p) the exclusive section under which items of this nature would be allowed as a deduction. H. Rept. 2333, 77th Cong., 2d Sess. (1942), 1942-2 C.B. 372, 451; S. Rept. 1631, 77th Cong., 2d Sess. (1942), 1942-2 C.B. 504, 607. See *Wesley Heat Treating Co. v. Commissioner,* 30 T.C. 10, 22-23 (1958), affd. 267 F.2d 853 (7th Cir. 1959); *Times Publishing Co. v. Commissioner,* 13 T.C. 329, 335 (1949), affd. per curiam 184 F.2d 376 (3d Cir. 1950). Section 23(p) was reenacted as section 404 in the 1954 Code in essentially the same form. *Don E. Williams Co. v. Commissioner,* 429 U.S. at 579-580.

Petitioner's position runs counter to the statutory scheme. It would allow taxpayer-employers to characterize portions of deferred compensation benefits as interest, thereby providing an employer with current tax deductions for a part of the deferred compensation benefits without meeting the strict requirements necessary to assure the actual receipt of benefits by the participants. If the employer's credit rating degenerated, making it less likely that the employee would ever receive benefits, there would be greater justification for a higher rate of "interest." If this "interest" element were deductible, the amount of deductions generated by nonqualified deferred compensation plans would increase in direct proportion to the risk that the employee might ultimately receive nothing. The deductible "interest" element would often exceed the original

amount of deferred compensation. See B. Bittker & L. Lokken, Federal Taxation of Income, Estates, and Gifts, par. 60.2.1, pp. 60-10–60-12 (2d ed. 1990). Such a result would be contrary to the legislative objective of section 404. See *Don E. Williams Co. v. Commissioner, supra* at 579-580.

When section 404 was amended in 1978, Congress indicated that section 404 was applicable to any "method of * * * compensation having the effect of a plan deferring the receipt of compensation." H. Rept. 95-1800 (Conf.) (1978), 1978-3 C.B. 205. Petitioner's plan came within this broad sweep as would an employee pension plan. The Employee Retirement Income Security Act of 1974 (ERISA) defines the term "pension plan" as follows:

(2)(A) Except as provided in subparagraph (B), the terms "employee pension benefit plan" and "pension plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program—

(i) provides retirement income to employees, or

(ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond,

regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan.

[29 U.S.C. sec. 1002 (1988).]

Petitioner's DCA's resulted in the deferment of income by its employees. The benefits under the DCA's were based upon the initial amount of compensation that was deferred and the period of the deferral. For practical and legal purposes, petitioner's plan could also be described as a pension plan.[10] See *Springfield Productions Inc. v. Commissioner*, T.C. Memo. 1979-23. If petitioner's plans had been described as pension plans instead of deferred compensation plans, section 404(a) would specifically preclude petitioner from deducting its obligations under the DCA's until the employer's "contributions" had been paid and were includ-

---

[10]While the DCA's come within the definition of a "pension plan," ERISA provides a specific exemption from the coverage and funding requirements of ERISA for "a plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." 29 U.S.C. secs. 1051(2) and 1081(a)(3) (1988).

able in the employees' incomes. The only "contributions" to be paid pursuant to petitioner's plans would be the ultimate payment of benefits to participating employees. Acceptance of petitioner's theory, that part of the plan benefits are attributable to accrued interest on deferred compensation, would mean that an employer's ability to take current deductions in connection with a nonqualified deferred compensation arrangement would be dependent on the title of the plan, rather than its substance.

Another reason why deductions attributable to petitioner's DCA's should be limited to amounts actually paid and includable in the gross income of recipients can be inferred from the literal provisions of section 404. Section 404(a) provides that "If *contributions are paid*" under certain types of designated plans (including pension plans) or "if *compensation is paid or accrued* on account of any employee under a plan deferring the receipt of such compensation, such contributions or compensation shall not be deductible under section 162" but shall be deductible under section 404(a). (Emphasis added.) Both parties agree that the timing of deductions for the employees' deferred "compensation" in this case is controlled by section 404(a)(5). Section 404(a)(5) provides that deductions are to be taken "in the taxable year in which an amount attributable to the *contribution* is includable in the gross income of employees participating in the plan." (Emphasis added.) Section 404(a)(5) makes no reference to "compensation." It simply provides for deduction by the employer in the year the "amount attributable to the *contribution*" is reportable by the employee. Throughout section 404, the term "contribution" is used in conjunction with the word "paid," and it is clear that unless there is an actual outlay of funds by an employer, there is no "contribution" within the meaning of section 404(a)(5). The only payments pursuant to the DCA's were to be made upon the employee's retirement or termination. Query: What is the "contribution" or "amount attributable to the contribution" in petitioner's plan that will trigger deductibility under section 404(a)(5)? If petitioner's plan does not call for a "contribution," the literal provisions of section 404(a)(5) would never be triggered and the deferred compensation would never be deductible. The answer is that

petitioner's "contribution" under the employee DCA's is the total payment to the employee upon retirement or termination. Under section 404(a)(5), a "contribution" is only deductible when it is includable in the gross income of the employee. The "contribution" and "compensation" pursuant to petitioner's DCA's, are identical just as petitioner's DCA's can be defined as either pension plans or deferred compensation plans within the meaning of section 404(a).

The "interest" factor in petitioner's DCA's is not interest within the meaning of section 163. Rather, it is part of the deferred compensation. It is therefore deductible only as permitted under section 404(a)(5) and (d). To allow petitioner to characterize part of the deferred compensation plan benefits as "interest" and deduct that amount in the year credited to the participants' accounts would be contrary to the legislative purpose of section 404.

*Decision will be entered under Rule 155.*

Reviewed by the Court.

NIMS, PARKER, KÖRNER, HAMBLEN, CLAPP, JACOBS, GERBER, and COLVIN, *JJ.*, agree with the majority opinion.

WHALEN, *J.*, did not participate in the consideration of this opinion.

---

HALPERN, *J.*, concurring: I concur with the result reached by the majority, but I disagree, in part, with the majority's analysis. I do not think that the case turns on whether the "interest" component of the deferred compensation represents payments made by petitioner for the use of money "borrowed" from its employees and director. A central focus of the time value of money legislation of the last 10 years was to identify hidden interest. Congress clearly understood that transactions involving deferred payments for services contained an interest element.[1] Thus, given our

---

[1]See, e.g., S. Rept. 98-169 (Vol. 1), at 249-250 (1984) ("Present law provides exceptions to the rules requiring annual recognition and deduction of OID for the following: * * * (6) obligations issued in exchange for services. fn. * * * Present law is unclear as to whether all deferred payments for services are within the scope of sections 404 and 404A.")

current understanding of the interest element inherent in deferred payment transactions, the majority's analysis seems anachronistic. Moreover, had the participants in the deferred compensation arrangements here in question computed their taxable income under the accrual method of accounting, thus being required to take into income their "base" compensation in the year earned (notwithstanding its deferred receipt), would the majority still maintain that the "interest" element accruing each year did not, indeed, constitute interest for Federal income tax purposes? The majority's conclusion that no payments of interest are being made is dependent on its prior conclusion that the petitioner had not borrowed anything from its employees and director. I do not see how that prior conclusion can turn on the accounting method of petitioner's employees and director.[2]

The inquiry as to whether petitioner has, in a property law sense, borrowed anything from its employees and director is, I believe, not a helpful inquiry. The proper inquiry, I believe, is whether deductibility of the "interest" component of the deferred payment is governed by section 404. I believe that it is. With regard to nonqualified deferred compensation, the plain purpose of section 404 is to require matching of income inclusion and deduction as between the employee and employer.[3] Subsection (a) of section 404 disallows a deduction under the normal rules of deductibility and tax accounting for compensation the receipt of which is deferred. However, if such compensation otherwise would be deductible, the subsection allows a deduction under the special rules found in section 404. Subsection (a)(5) provides a limitation on the amount deductible in any year in connection with a nonqualified plan deferring the receipt of compensation. In pertinent part, it provides for a deduction in the taxable year in which an amount attributable to the compensation is includable in the gross income of an employee participating

---

[2]Those individuals computed taxable income under the cash method of accounting. As a result, they do not, for tax purposes, realize income prior to receipt. Perhaps, then, for tax purposes, it could be said that, since they have received nothing, they have nothing to lend. Such an analysis, although helpful on a theoretical level, does not, I believe, aid in the problem of statutory construction here presented.

[3]See H. Rept. 2333, 77th Cong., 1st Sess. (1942), 1942-2 C.B. 372, 451-452; S. Rept. 1631, 77th Cong., 2d Sess. (1942), 1942-2 C.B. 504, 609.

in the plan. Section 1.404(a)-12(b)(2) of the income tax regulations illustrates the application of section 404 with regard to the payment of unfunded (nonqualified) pensions. In pertinent part, it states: "If unfunded pensions are paid directly to former employees, such payments are includible in their gross income when paid, and accordingly, such amounts are deductible under section 404(a)(5) when paid."[4] It would be unusual for a pension plan not to have an investment (or "interest") element to it, yet the regulation unambiguously allows a deduction *equal* to the pension payment only when such payment is includable in gross income. I see no reason why a different rule should apply to the payments of deferred compensation here in question. Whether the parties label a portion of the payments interest does not matter. To allow an accrual method employer to deduct interest in advance of inclusion by employees would frustrate the matching principle apparent in the statute. It can be said that the effect of that matching principle is that the employer is being taxed in substitution for not currently taxing the employee.[5] If the employer were allowed an interest deduction, then the present discounted value of the tax burden on the employer would not be equivalent (i.e., would be less than) an immediate tax on the employee (assuming, of course, equal tax rates).[6] We need not allow that result.

HAMBLEN, COHEN, and PARR, *JJ.*, agree with this concurring opinion.

---

FAY, *J.,* dissenting: I respectfully disagree with the majority opinion of this Court. The majority held the amounts in question are not interest and further concluded even if these amounts are interest, the deduction is limited by sections 404(a)(5) and 404(d). I find the amounts in question are interest and are deductible as permitted by

---

[4]Compare sec. 1.404(a)-12(b)(1), which describes a deduction equal only to the employer's contribution to the plan but, apparently, deals only with a funded plan.

[5]See Halperin, "Interest in Disguise: Taxing the 'Time Value of Money,' " 95 Yale L.J. 506, 520.

[6]See the discussion in Halperin, *supra* at 519-524.

section 163, without limitation by sections 404(a)(5) or 404(d).

As the majority correctly pointed out (majority op. at 419), this Court severed the retroactive revocation issue,[1] holding a trial only with respect to the interest characterization and deductibility issues. At trial both parties expended substantial time and energy presenting evidence with regard to the interest issue, and at the trial's conclusion, this case stood submitted. As trier of fact I found the amounts in question to be interest.

Upon further consideration, this Court decided to take evidence on the arbitrary retroactive revocation issue. I set the case for a second trial in Boise, Idaho. However, when the case was called from the calendar, petitioner conceded the arbitrary retroactive revocation issue.[2] This concession involved a substantial sum of money amounting to hundreds of thousands of dollars. Petitioner, in the presence of respondent, disclosed in great detail to the Court the reasons for conceding the revocation issue. The abandonment of that claim highlights the importance petitioner placed on obtaining a definitive determination on the interest characterization and deductibility issues.[3]

Factually, the amounts deferred under the DCA's must be interest. "[I]nterest is * * * paid because of delay in the receipt of funds." *Aames v. Commissioner,* 94 T.C. 189, 193 (1990). Under the facts of the instant case, it is obvious the additional amounts accrued under the DCA's were accrued because of delay in the receipt of funds. While I do not quarrel with the majority's definition of interest, the majority's finding the amounts are not interest is contrary to the facts of this case.[4]

A common fact pattern is useful to illustrate this point.

---

[1]On June 14, 1982, petitioner submitted to respondent a request for a change in method of accounting (from cash to accrual) for the interest element of the DCA. On Aug. 26, 1983, respondent granted petitioner's request for a change of accounting method. On Jan. 29, 1986, respondent revoked its letter granting approval of petitioner's change of accounting method.

[2]The parties presented no new evidence concerning the interest characterization and deductibility issues.

[3]The extensive amicus brief filed by Northwest Mutual Insurance Co. highlights the importance other taxpayers place on these issues.

[4]In recent years Congress has been attempting to identify hidden interest. See secs. 163, 467, 483, 1272, and 7872. To deny an interest element in this transaction would be to stand history on its head.

B wants to purchase a piece of real property from S. The property has a value of $45,000. B cannot pay the full purchase price immediately. S and B enter into a contract on January 1, 1983. S agrees to transfer title and possession to B on February 1, 1983. B agrees to pay S $10,000 upon transfer of title plus $100,000 due in ten years. B and S agree the $100,000 is comprised of $35,000 towards the purchase price and $65,000 of interest (10.5% compounded daily).

This example is indistinguishable from the facts of the instant case. In the example, S transferred the real property to B, thus providing the consideration that gave rise to S's *immediate right to the delayed payment* from B. In the instant case, the employees and directors transferred to petitioner their promises of services and their actual performances of services.

It is important to stress that, in both the example and the instant case, the seller (whether of realty or services) *never* had the right to *current possession* of the buyer's funds. Yet the majority apparently would concede that there has been a forbearance in the example. There is the same forbearance in the instant case.

The majority's discussion of constructive receipt (majority op. at 422) appears to be accurate, but it is quite irrelevant to the dispute before us. In neither the example nor in the case before us has there been constructive receipt; in both there has been forbearance that should lead to the conclusion that the disputed amounts are interest.

One final note on the interest issue, we find the majority's reliance on *Goldsmith v. United States*, 218 Ct. Cl. 387, 586 F.2d 810, 816 (1978), and *Oates v. Commissioner*, 18 T.C. 570, 585 (1952), affd. 207 F.2d 711 (7th Cir. 1953), puzzling at best. Neither case involved the deduction side of the transaction and neither dealt with the interest element of deferral plans.

Having found the amounts in question are interest, the statute is clear: the deduction is not limited by sections 404(a)(5) and 404(d), and the majority offers no support for its contrary conclusions. In his concurring opinion, Judge Halpern argues that allowing an employer to deduct interest in advance of inclusion by employees frustrates the matching principle, but it is the prerogative of Congress, not this Court, to change the statutory result of section 404(a)(5).

Section 404(a)(5) limits deduction of only those amounts described under section 404(a). Sec. 1.404(a)-12(a), Income Tax Regs. Section 404(a)(5) in relevant part provides:

SEC. 404(a). GENERAL RULE.— * * * if compensation is paid or accrued on account of any employee under a plan deferring the receipt of such compensation, such * * * compensation shall not be deductible under section 162 (relating to trade or business expenses) or section 212 (relating to expenses for the production of income); but, if they satisfy the conditions of either of such sections, they shall be deductible under this section, subject, however, to [certain] limitations as to the amounts deductible in any year: * * *

By reading section 404(a) as prohibiting deductions otherwise permitted by section 163, the majority opinion effectively amends section 404(a) to read as follows:

if compensation is paid or accrued *(or if interest or other earnings on such compensation is paid or accrued)* on account of any employee under a plan deferring the receipt of such compensation, such * * * compensation shall not be deductible under section 162 (relating to trade or business expenses), *section 163 (relating to interest expenses)* or section 212 (relating to expenses for the production of income) * * *

Such judicial amendments of the statute are improper, ill-advised, and imprudent. "It is best, we may observe, where the laws are enacted upon right principles, that everything should, as far as possible, be determined absolutely by the laws, and as little as possible left to the discretion of the judges." Aristotle (384-322 B.C.), The Rhetoric, bk. 1, ch. I (J.E. Welldon trans.). Moreover, such an amendment is *contrary to regulations* issued by the Secretary of the Treasury on the proper application of section 404(a). Section 1.404(a)-1(b), Income Tax Regs., summarizes the requirements for a deduction under 404(a) as follows:

Contributions may * * * be deducted under section 404(a) *only to the extent that they are ordinary and necessary expenses* during the taxable year in carrying on the trade or business or for the production of income *and are compensation for personal services actually rendered.* [Emphasis added.]

Based on these regulations, section 404(a) limits deduction of *"only * * * compensation for personal services actually rendered."* The deferred amounts accruing under petitioner's DCA's are in part deferred compensation for personal

services and in part interest. Therefore, petitioner may deduct the interest portion as it accrues under the DCA plan.

Further support for deductibility can be found in section 1.404(a)-12(b)(1), Income Tax Regs. That regulation concerns the application of section 404(a)(5) and provides as follows:

(b) Contributions made after August 1, 1969—(1) In general. A deduction is allowable for a contribution paid after August 1, 1969, under section 404(a)(5) only in the taxable year of the employer in which or with which ends the taxable year of an employee in which an amount attributable to such contribution is includible in his gross income as compensation, and then only to the extent allowable under section 404(a). See sec. 1.404(a)-1. *For example, if an employer A contributes $1,000 to the account of its employee E for its taxable (calendar) year 1977, but the amount in the account attributable to that contribution is not includible in E's gross income until his taxable (calendar) year 1980 (at which time the includible amount is $1,150), A's deduction for that contribution is $1,000 in 1980 (if allowable under section 404(a)).*[5] [Emphasis added.]

Thus, in his own regulations, the Secretary of the Treasury applies section 404(a)(5) to limit *only* the $1,000 contribution for personal services. While the additional $150 is not specifically identified in the example, it is accepted practice for an employer to accrue interest with respect to compensation deferred under a DCA.[6] Implicitly, an accrual method employer may deduct the $150 interest component as that interest accrues.

In accordance with the foregoing, I would find the amounts in question are interest and are deductible under section 163, without limitation by sections 404(a)(5) and 404(d).

CHABOT, SWIFT, WRIGHT, and WELLS, *JJ.,* agree with this dissenting opinion.

---

[5]The Commissioner approved of this treatment in granting permission to petitioner to change his method of accounting. This permission was later retroactively revoked.

[6]See also B. Bittker & L. Lokken, Federal Taxation of Income, Estates, and Gifts, par. 60.2.1, p. 60-11, (2d ed. 1989) *"To reflect the time value of money,* deferred compensation agreements often inflate the amount to be paid, either implicitly (by designating a sum larger than would be reasonable if the compensation were paid immediately) or explicitly (by crediting the employee's account with *interest* at a specified annual rate). [Emphasis added]. See also N. Mancoff & D. Weiner, Nonqualified Deferred Compensation Arrangements, sec. 10.04 at 14-15, and sec. 10.09 at 30 (1987); Rev. Rul. 60-31, 1961-1 C.B. 174; Rev. Rul. 69-650, 1969-2 C.B. 106; and Rev. Rul. 71-419, 1971-2 C.B. 220.