VINCENT Z. AND ELISABETH K. PETERSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Peterson v. Commissioner
Docket No. 27265-89
United States Tax Court
T.C. Memo 1991-228; 1991 Tax Ct. Memo LEXIS 250; 61 T.C.M. (CCH) 2678; T.C.M. (RIA) 91228; May 22, 1991, Filed *250 Decision will be entered for the respondent. Thomas M. Foley, for the petitioners. Henry E. O'Neill, for the respondent. COHEN, Judge. COHEN
MEMORANDUM OPINION Respondent determined a deficiency of $ 10,627.28 in petitioners' Federal income tax for 1987. The issues for decision are (1) whether petitioners are entitled to an interest expense deduction under section 163(a) for an amount paid incident to petitioners' purchase of a fee simple interest in residential real property in settlement of condemnation proceedings commenced under the Hawaii Land Reform Act of 1967, Haw. Rev. Stat. ch. 516 (HLRA), and (2) if so, whether that amount, paid in 1987, is (partially) nondeductible personal interest within the meaning of section 163(h). Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the year in issue. All of the facts have been stipulated. The stipulated facts are incorporated as our findings by this reference. Background
This case is part of a litigation project that has been denominated "Summblight." We have previously addressed the first issue in the instant case in Midkiff v. Commissioner, *251 96 T.C. 724 (1991), filed this date. Certain taxpayers with docketed cases currently pending before this Court have executed written documents agreeing to be bound by the result in Midkiff; petitioners have not executed any such documents. The parties, however, submitted stipulations with respect to the historical background and certain operative provisions of the HLRA and the practices and procedures utilized by the Hawaii Housing Authority (HHA) in administering the HLRA that are identical in all material respects to the stipulations submitted by the parties in Midkiff and to our findings in that opinion. Therefore, rather than repeat verbatim the relevant provisions of the HLRA and the practices of the HHA, we incorporate by this reference our statement of background facts in Midkiff and find the following facts that gave rise to petitioners' claimed interest expense deduction in this case. Generally, the HLRA empowers the State of Hawaii, by and through the HHA, to acquire the leased fee interest in certain residential lots by exercising its eminent domain power, or by purchase under threat of eminent domain, and to transfer the fee interest acquired to the *252 lessee. Although the HLRA contemplates that the HHA will use its own appropriated funds to acquire leased fees from lessors under the HLRA, the HHA never utilized its own appropriated funds for any such acquisition. Further, in all HLRA-related leased fee acquisitions, whether directly between lessors and lessees or utilizing the HHA, the acquisition funds were paid directly by the lessees to the lessors pursuant to escrow agreements. Those funds were not paid under any circumstance to or by the HHA. As in effect for the year in which the condemnation action in this case was commenced, the amount of compensation to be paid to the lessor was determined by valuing the leased fees as of the date of designation. Haw. Rev. Stat. sec. 516-24 (1976). In 1983, the HLRA was amended to change the valuation date to the date of the summons of the complaint in an eminent domain action. Haw. Rev. Stat. sec. 516-24 (1985). The valuation date was changed so that the date in a condemnation action under the HLRA would be in conformity with the valuation date under general Hawaii condemnation law. The Dune Circle Action
Petitioners are husband and wife and resided in Kailua, Hawaii, at *253 the time they filed the petition in this case. Their residence was situated on a residential lot that was leased from its fee owner, the Kalama Land Company, Ltd. (Kalama). On or about September 13, 1978, pursuant to the HLRA, petitioners submitted an application to the HHA to purchase the leased fee interest in the lot where their residence was located (the application to purchase). Petitioners' lot was part of the Dune Circle Development Tract. On or about that same date, petitioners and 24 other lessees in the Dune Circle Development Tract submitted to the HHA a Request for Designation of that tract (the request for designation). Petitioners also submitted, in conformity with the HHA's requirements, certain financial information pertinent to their ability to purchase their leased fee interest if acquired by the HHA. On April 25, 1980, the HHA designated for acquisition the leased fee interests in petitioners' and 22 other lessees' lots in the Dune Circle Development Tract (the date of designation). On May 7, 1980, the HHA filed a Complaint in Eminent Domain against Kalama to condemn and acquire Kalama's leased fee interests in those lots (the Dune Circle action). The complaint *254 in the Dune Circle action was filed in the Circuit Court of the First Circuit for the State of Hawaii (the trial court). The HHA joined petitioners and the other lessees as defendants in that action because they had a "direct interest in the amount of compensation and damages" to be awarded and, further, because that "amount will ultimately be borne by the lessees who purchase the houselots [from the HHA]." The trial court determined that two residential lots in the Dune Circle action were not properly included in the lawsuit because the lots were located in a different development tract. Consequently, the trial court dismissed the complaint as to those two lots. The trial court ruled, however, that the jury in the Dune Circle action would be allowed to value the leased fee interests in those two lots even though the lots were to be excluded from the judgment to be entered in that action. Finally, the trial court determined that the HHA properly designated the remaining lots and that the public use and purpose of the HLRA was satisfied with respect to those lots. On June 25, 1985, a special verdict was filed in the Dune Circle action. The lots in the Dune Circle Development *255 Tract were valued as of May 7, 1980, the date the complaint in that action was filed. The jury determined that the fair market value of the leased fee interest in petitioners' lot was $ 94,539. Petitioners' Settlement and Purchase
As in other HLRA condemnation actions, the issue of whether the owner of the condemned leased fee interests, Kalama in the instant case, was entitled to receive blight of summons damages and, if so, in what amount, was contested. By order dated August 7, 1985, the trial court in the Dune Circle action denied Kalama's motion that it was entitled to receive blight of summons damages because "equity does not require an award of blight of summons damages in this case." On January 8, 1986, the trial court entered a judgment in the Dune Circle action. While the parties were pursuing appeals of that judgment, Kalama and petitioners and the other lessees commenced settlement negotiations. These negotiations ultimately led to a settlement of the Dune Circle action. On November 12, 1986, Kalama sent to petitioners a Statement of Fee Offer setting forth the terms and conditions of the proposed sale of petitioners' leased fee interest (the offer to sell). *256 Subject to the terms and conditions contained therein, Kalama determined the sale price of petitioners' leased fee interest as of that date, $ 122,901, as follows: The Sales Price shown above is only approximate. It includes the jury verdict for your lot, plus blight damages calculated at 5% simple interest/year from May 7, 1980 to May 7, 1986. At closing, Escrow will add an additional amount to cover interest from May 7, 1986 to the date of closing, at the rate of 5% per year. Escrow will also give you credit for all lease rent which you have paid from May 7, 1980 to the date of closing.
The offer to sell obligated petitioners and the other lessees to pay to Kalama its litigation costs and fees incurred if petitioners or other lessees elected not to purchase the leased fee interests in their lots. The offer to sell, however, also explained that, if a certain number of the original lessees in the Dune Circle action elected to purchase the interests in their lots, Kalama would waive its right to receive the nonpurchasing lessees' pro rata share of costs. Specifically, with respect to the foregoing, the offer to sell stated: If you decide not to buy, you *257 are obligated to pay your pro rata share of the litigation fees and costs incurred by Kalama. Your pro rata share is $ 11,000. You must pay this amount within 40 days from the date of this letter unless the lessees of 19 of the 23 lots in the lawsuit purchase their lots. If the required number purchase, Kalama will waive the requirement that lessees who do not buy must pay their pro rata share of Kalama's fees and costs.
Nonpurchasing lessees were required to pay to the HHA their pro rata share of the HHA's fees and costs. The offer to sell required petitioners and the other lessees to execute and return to the escrow company a "Reply to Proposal," indicating their intent to purchase, and to enclose therewith a nonrefundable deposit. In the event that they subsequently elected not to buy, they were responsible for any expenses incurred by the escrow company and Kalama in connection with the contemplated sale. The offer to sell, however, was not considered accepted until closing; specifically, the offer to sell stated: The "Reply to Proposal" only indicates your interest in acquiring your lot and will not constitute an acceptance of this offer. This offer may only *258 be accepted when you sign, at closing, the sales documents which will be prepared by escrow. Copies will be sent to you for preliminary review after you have submitted the "Reply to Proposal."
More than 19 of the lessees named in the original complaint purchased the leased fee interests in their lots under the terms of the settlement, and the Dune Circle action was dismissed with prejudice. The trial court's Stipulation and Order of Dismissal With Prejudice incorporated the general terms of the settlement (the order). With respect to the purchase price of the leased fee interests, the order stated: The sale price of each of the lots shall be the jury verdict increased at the rate of 5% simple interest per year to allow for appreciation, from May 7, 1980 until date of closing, minus lease rent actually paid during that period. * * *
Two of the lessees elected not to purchase the leased fee interests in their lots, and ownership to the same was retained by Kalama. Petitioners elected to purchase the leased fee interest in their lot. The purchase closed on April 15, 1987. The "sales/purchase price" was $ 94,539 and petitioners were charged the 5-percent annual addition *259 on that amount. That 5-percent annual addition was identified on the closing statement as "interest" from May 7, 1980, to March 26, 1987, and totaled $ 32,734.42. Petitioners received a credit against the total charges for "lease rent" from May 7, 1980, to May 1, 1987, in the amount of $ 2,863.18. Petitioners claimed the $ 32,734.42 "interest" payment as an interest expense deduction on their 1987 Federal income tax return. Respondent disallowed that portion of petitioners' claimed interest expense deduction. Discussion
The first issue for decision is whether the $ 32,734.42 that petitioners paid to acquire the leased fee interest in their residential lot is deductible as interest under section 163(a). Section 163(a) provides that "There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness." That section generally dictates that the following requirements be met: (a) There is "indebtedness"; (b) the indebtedness is that of petitioners; (c) the payment is of "interest"; and (d) for cash method taxpayers, the interest is paid in the taxable year that the deduction is claimed. Regardless of the characterization of the amount *260 at issue, such amount is deductible only if it is paid "on indebtedness." Knetsch v. United States, 364 U.S. 361, 365, 5 L. Ed. 2d 128, 81 S. Ct. 132 (1960). Indebtedness is "an existing, unconditional, and legally enforceable obligation for the payment of a principal sum." Howlett v. Commissioner, 56 T.C. 951, 960 (1971). "[A]lthough an indebtedness is an obligation, an obligation is not necessarily an 'indebtedness' within the meaning of section [163(a)]." Deputy v. du Pont, 308 U.S. 488, 497, 84 L. Ed. 416, 60 S. Ct. 363 (1940); Norton v. Commissioner, 474 F.2d 608, 610 (9th Cir. 1973), affg. a Memorandum Opinion of this Court. The "indebtedness" must be indebtedness in substance and not merely in form. Knetsch v. United States, 364 U.S. at 365-366; Karme v. Commissioner, 73 T.C. 1163, 1185 (1980), affd. 673 F.2d 1062 (9th Cir. 1982); Albertson's, Inc. v. Commissioner, 95 T.C. 415, 421 (1990). Petitioners discuss the nature of an HLRA leasehold condemnation action and the statutory requirements that must be satisfied to enable the HHA to commence proceedings to acquire a lessee's leased *261 fee interest from the lessor. Petitioners therefore argue that "A lessee of a residential lot who has applied to the HHA and has met the statutory qualifications to purchase the leased fee interest is obligated to purchase such interest." Petitioners rely on section 516-30 of the HLRA, which provides in part that a lessee who has applied to the HHA and qualified for purchase "shall purchase from the [HHA] by contract within sixty days of acquisition of the interest by the [HHA]." Haw. Rev. Stat. sec. 516-30 (1985). The obligation to purchase, petitioners contend, arises out of a lessee's obligation to pay their pro rata share of the HHA's costs if they failed or refused to enter into a contract with the HHA within 60 days after acquisition by the HHA. We addressed the same contention of the taxpayer in Midkiff v. Commissioner, supra, and concluded that this obligation: was not an "'indebtedness' within the meaning of section [163(a)]," Deputy v. du Pont, 308 U.S. at 497, and, in any event, was not the indebtedness upon which the disputed payment was computed. [Midkiff v. Commissioner, slip op. at 20.]
Moreover, Kalama waived its right *262 to receive costs from lessees who elected not to purchase the leased fee interest in their lots because the requisite number of lessees in the Dune Circle action elected to purchase. Thus, unlike the taxpayers in Midkiff, petitioners did not have any obligation to Kalama, the lessor, in the event that they elected not to purchase. In any event, the purported indebtedness upon which petitioners paid the disputed amount was not, as petitioners contend, an unconditional and legally enforceable obligation as of the date that the HHA commenced the condemnation action. Rather, as we concluded in Midkiff: [The taxpayers] were not unconditionally obligated to pay "just compensation" tothe [lessor] until they affirmatively executed the reply to the [lessor's] offer to sell, indicating their intent to purchase the lot, and escrow closed on the purchase. That is, [the taxpayers] were not obligated for the payment of a principal sum until the date that escrow closed on the purchase. [Midkiff v. Commissioner, slip op. at 20.]
Thus, under the terms of the HLRA, an unconditional obligation to purchase does not arise unless and until the lessee enters *263 into a contract to purchase with the HHA after the HHA has acquired the leased fee from the lessor. Further, in this case, under the terms of the offer to sell, an unconditional obligation to purchase from Kalama did not arise until the date of closing. We therefore conclude that the amount at issue was not paid on indebtedness within the meaning of section 163(a) and is therefore not deductible. Petitioners also contend that blight of summons damages consistently have been characterized as ordinary income to the recipient and are therefore "interest" for purposes of section 163(a). As we stated in Midkiff, however, "The amount in dispute is only deductible under section 163(a) if it is paid on indebtedness." Midkiff v. Commissioner, slip op. at 35. In light of our conclusion in this case, and because we considered and disposed of the similar contentions of the taxpayers in Midkiff v. Commissioner, supra, we need not address the second issue for decision or petitioners' remaining arguments. To reflect the foregoing, Decision will be entered for the respondent.