### APPEAL OF JOSEPH W. BETTENDORF.

Docket No. 2035.   Submitted May 11, 1925.   Decided January 19, 1926.

1. Interest awarded in a decree against a trustee as damages for the conversion of the trust property, is not interest on indebtedness, within the meaning of section 214 (a) (2) of the Revenue Acts of 1918 and 1921.

2. A judgment constitutes a debt, and interest paid thereon is properly deductible in ascertaining net income subject to tax.

*Joe R. Lane, Esq.*, and *E. B. McQuinn, C. P. A.*, for the taxpayer.
*A. H. Fast, Esq.*, for the Commissioner.

Before MARQUETTE and MORRIS.

This appeal is from the determination of a deficiency in income tax for the years 1918 to 1921, inclusive, in the amount of $250,-320.48. The amount involved herein is $180,754.34 of the total deficiency of $182,963.27 for the years 1920 and 1921, and it arises from the disallowance as deductions from gross income of certain alleged interest paid by the taxpayer in those years.

### FINDINGS OF FACT.

The taxpayer is an individual residing at Bettendorf, Iowa. From the year 1895 to June 3, 1910, he was associated with his brother, William P. Bettendorf, in the Bettendorf Axle Co., a corporation with a capital stock of $500,000, consisting of 1,000 shares of common stock of the par value of $100 each, and $400,000 of preferred stock. Of the common stock, 355 shares were held by the taxpayer, 643 shares by William P. Bettendorf, and 2 shares were issued to other individuals to qualify them to act as directors. On June 3, 1910, the net value of the corporation's property exceeded $2,000,000.

William P. Bettendorf, a resident of the State of Iowa, died intestate June 3, 1910, leaving his widow, Elizabeth H. Bettendorf, and his father and his mother as his heirs-at-law. Under the laws of the State of Iowa the widow was entitled to one-half of the estate and the parents to the other one-half. Aside from household furnishings and life insurance, the estate of William P. Bettendorf consisted of 643 shares of the common stock of the Bettendorf Axle Co., certain patents, the use of which had been assigned by him to the Bettendorf Axle Co., and $802,340 royalties due him from the Bettendorf Axle Co. for the use of the patents. As a set-off against the amount due William P. Bettendorf from the Bettendorf Axle Co., he had at the time of his death overdrawn his salary and dividend account with that company to the extent of about $122,000. Upon the petition of the widow the taxpayer was on June 8, 1910, appointed administrator of the estate of William P. Bettendorf and duly qualified. An inventory was filed, but an appraisement was waived, at his instance, by the heirs of the estate. On June 18, 1910, he was elected president of the Bettendorf Axle Co., and on July 9, 1910, the widow and the parents of William P. Bettendorf entered into a contract with the company by the terms of which the company released its claim for the amount by which the decedent had overdrawn on his salary and dividend account with the company, and the widow and the parents relinquished all royalties mentioned. On the same day the widow and the parents transferred all

letters patent held by William P. Bettendorf, and those applied for, to the taxpayer, as trustee, with authority and obligation on his part permanently to license the company to make use thereof without exacting any compensation; and this he did immediately.

In the latter part of May, 1911, the taxpayer suggested to Elizabeth H. Bettendorf the purchase by him of her portion of the stock in the Bettendorf Axle Co.; and on June 1 following he made her a written proposal to pay therefor the amount of $431,252. In his written proposal he represented that the value of her stock, less her proportionate share of certain amounts then owing by the estate of William P. Bettendorf to the Bettendorf Axle Co., was the amount offered by him therefor. On June 7, 1911, Elizabeth H. Bettendorf accepted the taxpayer's proposal to purchase her stock and on the same day she, with the parents of William P. Bettendorf, requested the taxpayer, in writing, as administrator of the estate of William P. Bettendorf, to make distribution of the shares of stock of the Bettendorf Axle Co., owned by the estate of William P. Bettendorf, and to transfer to her the portion thereof, i. e., 321½ shares belonging to her. On the same day the taxpayer, as administrator, transferred to Elizabeth H. Bettendorf, 321½ shares of the stock of the Bettendorf Axle Co. held by the estate of William P. Bettendorf, and she immediately transferred them to the taxpayer and received therefor the amount of $431,252.

In the year 1912 the taxpayer and others organized a new corporation, known as the Bettendorf Company, with a capital stock of $7,500,000, divided into common stock of the par value of $5,000,000 and preferred stock of the value of $2,500,000. The new corporation purchased the property, assets, and good will of the Bettendorf Axle Co. on or about February 17, 1913, for $7,500,000, and appears to have paid therefor with its own capital stock.

After the organization of the new corporation, but a short time before the acquisition by it of the assets of the Bettendorf Axle Co., Elizabeth H. Bettendorf, the widow of William P. Bettendorf, entered into negotiations with the taxpayer looking to the payment to her by him of additional consideration for the stock she had sold to him and for the royalties and patent rights she had relinquished and assigned to the Bettendorf Axle Co. As a result of these negotiations the taxpayer agreed to pay, and she agreed to accept, $50,000 in settlement of all matters in controversy, and on February 8, 1913, a written agreement to that effect was entered into by her and the taxpayer. By this agreement, however, she elected to receive from the taxpayer, in lieu of $50,000 cash, 500 shares of preferred stock in the Bettendorf Co. of the par value of $100 each. That amount of stock was thereupon delivered to her by the taxpayer.

In May, 1915, Elizabeth H. Bettendorf brought a suit in equity in the District Court of Scott County, Iowa, against the taxpayer, for rescission and cancellation of the contract of settlement of February 8, 1913, and for an accounting and equitable relief. The court, upon trial of the case, found that the taxpayer stood in a fiduciary relationship to, and was trustee for, Elizabeth H. Bettendorf from and after June 8, 1910, and owed to her a duty to make full and complete disclosures concerning all facts in relation to his dealings with her; that, as administrator of the estate of William P. Bettendorf, and as trustee for Elizabeth H. Bettendorf, he failed to make full and complete disclosures to her of the value of the stock of the Bettendorf Axle Co. and of the patent rights and royalties belonging to the estate of William P. Bettendorf and committed a breach of his duty toward her to his own financial advantage and at her expense; and that he continued to be trustee for her for the difference between the actual value on June 7, 1911, of the stock purchased by him from her and the amount paid by him therefor, and for the amount by which he had benefited in inducing her to release and transfer her interest in the royalties and patents referred to, and that he should account to her therefor. The court found that the amount still due on the stock was $329,514.51, and that the amount by which he had benefited by the release and transfer of her interest in the royalties and patents was $142,415.35. The court, on June 5, 1916, decreed that the taxpayer should account to Elizabeth H. Bettendorf for the amounts of $329,514.51 and $142,415.35, with interest at 6 per cent on the latter amount from July 9, 1910, and entered a judgment in her favor for the total amount of $522,394.34, with interest thereon at the rate of 6 per cent from the date of the decree. The court also ordered the annulment and cancellation of the contract of settlement of February 8, 1913, with certain exceptions, and ordered Elizabeth H. Bettendorf to account to the taxpayer for the $50,000 of preferred stock received by her under that settlement and for the dividends received by her on the stock. Upon appeal to the Supreme Court of Iowa, the decree of the District Court was modified so as to include therein interest on the amount of $329,514.51 from July 7, 1910, to the date of the decree. The case is reported in *Bettendorf* v. *Bettendorf*, 190 Iowa, 83; 179 N. W. 444.

On December 30, 1920, the taxpayer paid to Elizabeth H. Bettendorf the amount of $319,468.37, representing (a) all of the interest allowed by the District Court in the original decree, or $50,462.48; (b) all of the additional interest allowed under the modification of the decree by the Supreme Court, or $98,746.03; and (c) all of the interest on the judgment as modified from June 5, 1916, to and including the 30th day of December, 1920, or $170,259.86. On February 28, 1921, the taxpayer paid to Elizabeth H. Bettendorf the sum of

$476,584.51, representing the principal sum of $471,129.86 included in the judgment referred to, and interest thereon from December 30, 1920, to February 28, 1921, amounting to $4,654.65.

The taxpayer kept his books on the cash receipts and disbursements basis and, in computing his net income for the years 1920 and 1921, deducted the amounts of $319,468.37 and $4,654.65, respectively, paid in those years to Elizabeth H. Bettendorf as interest. The Commissioner disallowed the deductions and determined that there is a deficiency in tax for the year 1920 in the amount of $180,542.85 and for the year 1921 in the amount of $2,420.42.

### DECISION.

The deficiency should be computed in accordance with the following opinion. Final determination will be settled on 10 days' notice, in accordance with Rule 50.

### OPINION.

MARQUETTE: The only question presented by this appeal is whether or not the taxpayer, in computing his net income for the years 1920 and 1921, is entitled to deduct the amounts of $319,468.37 and $4,654.65, respectively, paid by him to Elizabeth H. Bettendorf in those years, under the circumstances set forth in the findings of fact herein. The taxpayer contends that the payments in question represented interest on indebtedness and are deductible under the provisions of section 214 (a) (2) of the Revenue Acts of 1918 and 1921, which respectively provide that, in computing net income, there shall be allowed as deductions:

(2) All interest paid or accrued within the taxable year on indebtedness, except on indebtedness incurred or continued to purchase or carry obligations or securities (other than obligations of the United States issued after September 24, 1917), the interest upon which is wholly exempt from taxation under this title as income to the taxpayer, or, in the case of a nonresident alien individual, the proportion of such interest which the amount of his gross income from sources within the United States bears to the amount of his gross income from all sources within and without the United States.

(2) All interest paid or accrued within the taxable year on indebtedness, except on indebtedness incurred or continued to purchase or carry obligations or securities (other than obligations of the United States issued after September 24, 1917, and originally subscribed for by the taxpayer) the interest upon which is wholly exempt from taxation under this title.

The Commissioner urges that the payments involved herein, made by the taxpayer to Elizabeth H. Bettendorf, were not interest on indebtedness, but constituted a part of the damages to which she was found by the court to be entitled on account of the taxpayer's conversion of her property and property rights.

Interest is the compensation allowed by law, or fixed by the parties, for the use or forbearance of money, or as damages for its detention. 33 Corpus Juris, 178. In Bouvier's Law Dictionary, interest is defined as "the compensation which is paid by the borrower of money to the lender for its use, and, generally, by a debtor to his creditor in recompense for his detention of the debt." In the case of *Redfield* v. *Ystalyfera Iron Co.*, 110 U. S. 174, the court, in speaking of interest, said:

Interest is given on money demands as damages for delay in payment, being just compensation to the plaintiff for a default on the part of his debtor. Where it is reserved expressly in the contract, or is compelled by the nature of the promise, it becomes part of the debt, and is recoverable as of right; but when it is given as damages, it is often matter of discretion.

It is therefore necessary, in order to arrive at a proper solution of the question presented herein, first to determine whether the interest included in the decree of the District Court for Scott County, Iowa, as modified by the Supreme Court, in the suit referred to in the findings of fact, was compensation for the use or forbearance of money or damages for the detention of money. From the opinion of the Supreme Court of Iowa in that case, reported in 190 Iowa, 83, it seems clear to us that the interest included in the decree was given as damages for the wrongful detention by the taxpayer of money which he, as trustee, held for the use and benefit of Elizabeth H. Bettendorf. The court in its opinion, speaking of the alleged contract of settlement of February 8, 1913, said:

This was not a case where the fraud was perpetrated by parties dealing at arm's length; the plaintiff had a right to rely upon defendant, and was not at fault in not doubting the fairness of all his transactions; and we are of the opinion that it cannot be said that the plaintiff should be estopped by the contract of 1913 from claiming damages * * *.

The court, in awarding interest on the difference between the value of the stock which the taxpayer acquired from Elizabeth H. Bettendorf and the amount he had paid her therefor, said:

The defendant acquired plaintiff's stock at that time, and has since enjoyed all the advantages of its ownership, and so manipulated it that restoration is impossible. There seems no good reason for denying plaintiff compensation for the use of the money which she should then have been paid for the stock, and which through deception defendant avoided paying. What happened was tantamount to the conversion of the deficiency in the purchase price by defendant in his trust capacity, and is clearly within the rule which includes interest from the date of conversion as part of the damages allowed. See *Doyle* v. *Burns*, 123 Iowa, 488; *In re Estate of Young*, 97 Iowa, 218; *Hook* v. *Payne*, 14 Wall. 252; *Ludington* v. *Patton*, 121 Wis. 649; 99 N. W. 614. The award is merely for the difference between what the fiduciary actually paid and what he should have paid for the stock, and simple interest thereon at

the legal rate is not only just, as he has enjoyed the income from the stock, but adequate inasmuch as the *cestui que trust* intentionally parted with said stock.

The taxpayer contends that, even if the amount included as interest in the decree referred to was awarded as damages, it is interest nevertheless. Assuming that contention to be true, we are, nevertheless, of the opinion that such interest is not deductible in computing the taxpayer's net income as " Interest paid or accrued    *    *    * on indebtedness." The relation of trustee and *cestui que trust* is entirely different from the relation of debtor and creditor. A trustee holds the legal title to property for the use and benefit of the *cestui que trust*, the equitable title thereto being in the *cestui que trust*. There is no debt due from the trustee to the *cestui que trust*, but the trustee must account for the trust property and the income and profits therefrom, or, if he converts them to his own use, respond in damages. In the case under consideration the court expressly held that the taxpayer, at the time he induced Elizabeth H. Bettendorf to assign and transfer her interest in the patents and royalties owned by and due to the estate of her husband, and to sell her shares of stock in the Bettendorf Axle Co., was a trustee for her, and he continued to be, until the day of the decree, a trustee for her for the amounts by which he had benefited on account of the assignment of the patents and royalties and the amount of the difference between the actual value of the shares of stock at the time of the sale and the amount paid her at that time. It therefore appears that the relation of debtor and creditor did not exist between the taxpayer and Elizabeth H. Bettendorf at any time during the period June 8, 1910, to June 5, 1916, and that the interest included in the decree of the court in the case of *Bettendorf* v. *Bettendorf* was not interest on indebtedness, within the purview of section 214 (a) (2) of the Revenue Acts of 1918 and 1921, and hence is not deductible in computing the taxpayer's net income for the years in which it was paid.

With reference to the amounts of $170,259.86 and $4,654.65 paid by the taxpayer to Elizabeth H. Bettendorf on December 30, 1920, and February 28, 1921, respectively, as interest on the judgment rendered in the case of *Bettendorf* v. *Bettendorf*, as modified by the Supreme Court of Iowa, a different situation exists from that presented by the payment of the amounts included as interest in the judgment. Whatever may have been the legal relation of the taxpayer and Elizabeth H. Bettendorf prior to June 5, 1916, he was from that date and until February 28, 1921, indebted to her in the amount of the judgment rendered against him. A judgment is an obligation for the payment of money, 33 Corpus Juris, 1056; a

security record, *Provident Savings Life Assurance Society* v. *Ford*, 114 U. S. 635; often denominated by courts as a debt of record, *Heinl* v. *Terre Haute*, 161 Ind. 44; 66 N. E. 450. It is evidence of indebtedness of the highest degree known to the law. *Ambler* v. *Whipple*, 139 Ill. 311; 28 N. E. 841. While it is true, as pointed out by counsel for the Commissioner, that interest upon judgments allowed by statute is not interest in the strict sense but is in the nature of liquidated damages for delay in payment, *Wyoming National Bank of Laramie* v. *Brown*, 7 Wyo. 494; 53 Pac. 291; *Morley* v. *Lake Shore Railway Co.*, 146 U. S. 162, we nevertheless are of the opinion that it is interest on indebtedness, within the meaning of section 214 (a) (2) of the Revenue Acts of 1918 and 1921. The indebtedness does not fall within any exceptions provided in those sections, and it therefore follows that the taxpayer, in computing his income for the years 1920 and 1921, is entitled to deduct the amounts paid by him in those years as interest thereon. In all other respects the determination of the Commissioner is approved.

On reference to the Board, PHILLIPS dissents.