830

N. V. KONINKLIJKE HOLLANDISCHE LLOYD, (ROYAL HOLLAND LLOYD), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 78662. Promulgated July 24, 1936.

*Raymond N. Beebe, Esq.*, and *Raymond C. Cushwa, Esq.*, for the petitioner.

*William E. Davis, Esq.*, for the respondent.

OPINION.

VAN FOSSAN: This proceeding was brought to redetermine a deficiency in the income tax of the petitioner for the year 1932 in the sum of $49,749.83, together with a penalty of $12,437.46 for delinquency.

The sole issue is whether or not moneys received by the petitioner, a foreign corporation, in payment of a judgment in its favor against the United States as the result of a suit in the Court of Claims for damages for the illegal detention of the petitioner's steamship during the War, constituted income from sources within the United States and, as such, was subject to tax.

The imposition of the penalty raises a dependent issue.

The facts were stipulated substantially as follows:

The petitioner is, and was at all times material hereto, a corporation organized and existing under the laws of The Netherlands, with its principal office at Amsterdam, The Netherlands.

During the year 1917 the petitioner was the owner and operator of a fleet of ocean-going steamships, and was engaged in the business of transporting passengers and freight between the ports of various nations and on the high seas. One of said ships was the steamship *Zeelandia*, which prior to October 17, 1917, was engaged in transporting passengers and freight between The Netherlands and South American ports, touching at North American ports enroute.

In September 1917 the *Zeelandia* sailed from South American ports for The Netherlands, via New York, carrying a cargo, all of which was consigned to Netherlands Oversea Trust Co., at various

ports of The Netherlands; and also carrying about fifty-five passengers, some of whom were United States naval officers who took passage to New York, and mails destined for the United States. When the *Zeelandia* arrived off New York Harbor she carried a full supply of provisions, stores, and fuel sufficient to enable her to continue her voyage to The Netherlands without taking on additional stores or provisions, provided no additional passengers were taken on at New York. The passengers and mail could have been discharged by tugs beyond United States waters, but relying on the assurances of customs officials that the vessel might come into New York Harbor and be cleared out without hindrance, the *Zeelandia* came into the harbor of New York on October 16, 1917.

On October 17, 1917, an official of the petitioner applied to the United States Shipping Board for a license to take additional stores on the *Zeelandia* to enable her to carry a number of stranded Dutch citizens who desired to book passage to Holland. On October 22, 1917, not having received a reply to its application, the petitioner abandoned its plan to transport the additional Dutch passengers and applied for clearance of the *Zeelandia* from the port of New York. The United States customs officials refused clearance on the ground that petitioner did not submit an export license for the vessel's transit cargo, bunkers, and stores. On the same day, petitioner applied, under protest, for an export license for such transit cargo, bunkers, and stores. From October 22, 1917, until March 21, 1918, officials of the United States Government refused to permit the *Zeelandia* to leave New York Harbor.

On March 21, 1918, the United States formally seized, requisitioned, and took over the steamship *Zeelandia* and placed her in the active service of the United States, and subsequently the petitioner was paid by the United States for the use of the vessel after that date.

For several years thereafter the Government of The Netherlands unsuccessfully attempted to procure a diplomatic settlement through the State Department of the United States, of the claim of the petitioner against the United States for the damages sustained by it by reason of the refusal of the Government authorities to grant clearance to the *Zeelandia* during the period from October 17, 1917, to March 21, 1918. On March 3, 1927, the Congress of the United States enacted the following act:

An Act for the Relief of the Royal Holland Lloyd, a Netherlands corporation of Amsterdam, The Netherlands.

Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled: That the claim of the Royal Holland Lloyd, owners of the Netherlands steamship Zeelandia, against the United States for damages alleged to have been sustained as a result of the refusal

of the Federal authorities to grant clearance to the vessel during the period from October 17, 1917, to March 21, 1918, may be sued for by the said Royal Holland Lloyd in the United States Court of Claims, and said court shall have jurisdiction to hear and determine such suit to judgment and either party shall have the right of appeal: *Provided*, That such notice of the suit shall be given to the Attorney General of the United States as may be provided by order of the said court, and it shall be the duty of the Attorney General to appear and defend for the United States: *Provided further*, That said suit shall be brought and commenced within four months of the date of the passage of this Act.

Thereafter, pursuant to the said act, the petitioner instituted a suit against the United States in the Court of Claims. On December 7, 1931, the Court of Claims decided that petitioner was entitled to recover $446,826.22, together with interest, as follows:

| | |
|---|---:|
| Loss of use of vessel | $332,292.20 |
| Cost and loss on coal | 30,602.02 |
| Wages and premiums to crew | 49,086.00 |
| Cost of provisioning crew | 19,125.00 |
| Cost of repairs and survey and deck and engine room supplies | 7,500.00 |
| Cost of port expenses | 4,192.50 |
| Cost of water consumed | 850.50 |
| Cost of insurance | 3,177.00 |
| | 446,826.22 |

See *Royal Holland Lloyd* v. *United States*, 73 Ct. Cls. 722.

On July 18, 1932, the petitioner received from the United States Government a warrant in the amount of $531,356.95 in partial payment of the judgment of the Court of Claims. The payment included damages for the market value of the use of the *Zeelandia*, and also for the cost and loss of fuel, wages, various repairs, port expenses, water, insurance, and like items, exclusive of any allowance for overhead or advertising expenses, by reason of the refusal of the United States to grant clearance of the steamship *Zeelandia*, and the refusal to permit her to leave the harbor of New York from October 22, 1917, to March 20, 1918, together with interest in the amount of $84,531.73.

During the calendar year 1932 and at all times prior thereto the steamship *Zeelandia* was documented under the laws of The Netherlands; and at all times material hereto the laws of The Netherlands granted to citizens of the United States and to corporations organized in the United States an equivalent exemption to the one granted to the operators of ships under a foreign flag by section 231 (b) of the Revenue Act of 1932.

During the year 1932 the petitioner was not engaged in business in the United States and did not maintain an office for employees kept within the United States.

On May 24, 1933, the collector of internal revenue addressed a letter to the petitioner at Amsterdam, stating that the Bureau of Internal Revenue had determined that the petitioner had realized taxable income in the amount of $416,822.93 during the year 1932 as the result of the judgment of the Court of Claims in the case hereinbefore mentioned; that letter informed the petitioner that a return should be filed on or before June 15, 1933. Upon receiving said letter, on June 20, 1933, the petitioner sent a radiogram to its United States attorneys, Davies, Jones, Beebe & Busick, of Washington, D. C., stating the receipt of the said letter, and requesting its attorneys to apply for an extension of time for filing the return. On June 21, 1933, the petitioner's attorneys addressed a letter to the collector requesting an extension of time sufficient to enable the petitioner and its attorneys to investigate the question of whether or not there was a liability for income taxes on the part of the petitioner. Such request for an extension was denied for the reason that it was not made on or before June 15, 1933. After certain correspondence between the petitioner and its attorneys in the United States, a return for the year 1932 was filed on or about November 27, 1933. That return set out the facts with reference to the payment of the judgment of the Court of Claims, and the petitioner's contention that no part of the said judgment constituted taxable income.

The Commissioner based his deficiency notice on the following ground:

The compensation determined by the Court was based upon the boat charter value, that is, the amount which it is estimated the corporation would have received if it had not been refused clearance by the United States authorities and could have chartered its boat. It is held that the amount of the award and interest thereon represents taxable income from sources within the United States * * * and therefore taxable under the provisions of section 119 (a) (4) of the Revenue Act of 1932.

The petitioner is a foreign corporation and its gross income is limited by section 231 (a) of the Revenue Act of 1932, which provides:

(a) *General Rule.*—In the case of a foreign corporation gross income includes only the gross income from sources within the United States.

The phrase "income from sources within the United States" is defined by section 119 (a) of the same act to include the following general heads:

(1) Interest (on bonds, notes or other interest-bearing obligations of residents, corporate or otherwise, etc.)
(2) Dividends
(3) Personal services
(4) Rentals and royalties
(5) Sale of real property.

Section 119 contains no definition of income of a general or all-inclusive nature such as is found in section 22 (a)[1] and, therefore, the income shown to be taxed must come strictly within the limits of the statutory requirements.

It is at once obvious that the amount received by the petitioner does not come within the classification of subdivisions 2, 3, or 5. Subdivision 4 of section 119 on which the respondent relies is as follows:

(4) *Rentals and Royalties.*—Rentals or royalties from property located in the United States or from any interest in such property, including rentals or royalties for the use of or for the privilege of using in the United States, patents, copyrights, secret processes and formulas, good will, trade marks, trade brands, franchises, and other like property.

We are unable to agree with respondent in this position. The payment made to the petitioner by the United States did not consist of rentals or royalties—it was in settlement of a judgment obtained as just compensation for damages for the unlawful detention of the petitioner's property. It matters not that the damages may have been measured in part by the "loss of use of the vessel." The sum received by the petitioner remains the payment of a judgment for damages and does not constitute rent "from property located in the United States."

Nor do we believe the payment, or any part of it, falls within the first subdivision entitled "interest." Under well established rule, the "interest" was included in the judgment as part of just compensation for damages sustained. *Seaboard Air Line Railway* v. *United States*, 261 U. S. 299; *Brooks-Scanlon Corporation* v. *United States*, 265 U. S. 106; *Phelps* v. *United States*, 274 U. S. 341. The Board held in *Consorzio Venesiano di Armamento e Navigazione*, 21 B. T. A. 984, that a payment by the United States to a foreign corporation as just compensation for the taking of property for public use, which payment included an amount equivalent to interest for the period of use, did not result in income under the section here involved. We see no difference of principle in the case at bar. Here, the stipulation denominated the sum of $84,531.73 as the "amount received for damages measured by interest" and in its opinion the Court of Claims stated: "The plaintiff is entitled to interest, as has been said, because such allowance is 'rightful' and is necessary adequately to compensate it for the damage." The facts here are more strongly

---

[1](a) *General Definition.*—"Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. [Emphasis supplied.]

in favor of the petitioner than those in the *Consorzio Venesiano di Armamento e Navigazione* case. Nor does the holding of the Supreme Court in *Helvering* v. *Stockholms Enskilda Bank*, 293 U. S. 84, require a contrary result. There the Court held (1) that under specific statutory provision a refund was an interest-bearing obligation of the United States, and (2) that the United States was a "resident" within the meaning of the pertinent statute. Here the obligation of the United States is to make just compensation for the unlawful detention of the vessel. Just compensation for the damage so suffered requires that the party damaged be made whole. An integral part of a payment for such purpose is interest covering the period of detention. In such a case it is merely a convenient method of measuring the amount of one of the factors of damage. It is not a separable item of interest on an obligation.

We are of the opinion that the payment received by petitioner was not taxable.

Reviewed by the Board.

*Decision will be entered for the petitioner.*

TURNER dissents.