**Mary BRABSON, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

Civ. A. No. 93–K–2288.

United States District Court,
D. Colorado.

Aug. 15, 1994.

H. William Mahaffey, W. Thomas Beltz, Hecox, Tolley, Keene & Beltz, Colorado Springs, CO, for plaintiff.

Joel R. Roessner, Tax Div., Dept. of Justice, Washington, DC, Wm. G. Pharo, Ass't U.S. Atty., for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

Before me on defendant United States' motion to dismiss is the complex question of what constitutes "damages received on account of personal injuries or sickness" under the exclusion from gross income stated in Internal Revenue Code § 104(a)(2). In particular I must determine whether mandatory statutory prejudgment interest, added by operation of law to Colorado personal injury awards under C.R.S. § 13–21–101(1), is an element of "damages" excludable from in-

come within the meaning of § 104(a)(2) or whether it is taxable "interest" within the meaning of § 61(a)(4).

Plaintiffs Mary, Helen, and William Brabson initiated this action against the United States alleging overpayment of their 1988 federal income taxes. The Brabsons claim they were erroneously taxed on the prejudgment interest portion of a personal injury award Mary Brabson obtained against the City of Colorado Springs and others as a result of a gas explosion at the Brabsons' home in 1981. They seek recovery of the $371,000 in taxes assessed and paid on the portion of their damages award attributable to prejudgment interest, plus interest and attorney fees.

The United States moves to dismiss the Brabsons' complaint, asserting prejudgment interest is separate from damages and fully taxable as interest income. I disagree. Based on my review of the Code and caselaw interpreting it, I conclude mandatory statutory prejudgment interest is an element of compensatory "damages" available to plaintiffs pursuing personal injury actions under Colorado law. To the extent this conclusion conflicts with the Tax Court's recent ruling in *Kovacs v. Comm'r*, 100 T.C. 124, 1993 WL 46512 (1993), *aff'd in unpublished disposition*, 1994 WL 253035 (June 9, 1994), I decline to follow the majority's analysis, and adopt instead the dissent of Judge Beghe.

## I. *Facts*

The following facts are undisputed:

On July 15, 1981, an explosion damaged Mary Brabson's home, injuring Mary and her children, William and Helen. The explosion was linked to a gas leak. Mary Brabson filed suit in El Paso County District Court, naming the City of Colorado Springs, Stratmoor Hills Water District, and Stratmoor Hills Sanitation District as defendants. The case was tried to a jury and a verdict rendered in favor of the Brabsons. On October 29, 1983, the trial court signed a judgment awarding Mary Brabson $1,502,150.02 for personal injuries, $97,840.98 for property damage, and $341,159.10 in prejudgment interest from the date of the explosion to the date of judgment.

The defendants appealed. Before determination of the case by the Colorado Court of Appeals, the Stratmoor Hills defendants settled with Mary Brabson for $155,948.87. On November 26, 1986, the Court of Appeals issued an opinion affirming the trial court's judgment.

On February 17, 1987, the City of Colorado Springs filed a petition for writ of certiorari with the Colorado Supreme Court, seeking review of the Court of Appeals' decision. The petition was granted on May 11, 1987. On October 30, 1987, the Brabsons sought leave to execute partially on the judgment. The request was denied by the Colorado Supreme Court on November 10, 1987.

After oral argument on April 25, 1988, the Colorado Supreme Court ordered the petition for writ of certiorari denied as having been improvidently granted. On June 28, 1988, the parties filed a satisfaction of judgment in the El Paso County District Court indicating Mary Brabson received $2,888,-414.06 in connection with her action against the City of Colorado Springs. Of this, $370,-723.12 was attributed to mandatory statutory prejudgment interest on the personal injury award.

The Brabsons did not include the prejudgment interest as income on their 1988 federal income tax returns on grounds it constituted damages received on account of personal injuries under 26 U.S.C. § 104(a)(2). The Internal Revenue Service assessed income tax deficiencies against each of the Brabsons for the excluded prejudgment interest, which deficiencies the Brabsons paid. The Brabsons now seek to recover the amounts paid, plus interest and attorney fees.

## II. *Discussion*

■ As a general rule, "gross income means all income from whatever source derived." 26 U.S.C. § 61(a). All realized accessions to wealth are presumed to be taxable income, unless the taxpayer can demonstrate an acquisition is specifically exempt. *See Comm'r v. Glenshaw Glass Co.*, 348 U.S. 426, 430, 75 S.Ct. 473, 476, 99 L.Ed. 483 (1955); *Wulf v. City of Wichita*, 883 F.2d 842, 871 (10th Cir.1989).

Since 1918 Congress has expressly excluded from gross income tort damages received on account of personal injuries. Revenue Act of 1918, § 213(b)(6), 40 Stat. 1066, *discussed in Roemer v. C.I.R.,* 716 F.2d 693, 696 (9th Cir.1983) (footnote omitted). In its present form at 26 U.S.C. § 104(a)(2), the personal injury damages exclusion provides:

§ 104. Compensation for injuries and sickness.

(a) **In general.**—Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 213 (relating to medical, etc., expenses) for any prior taxable, year, *gross income does not include—*

\*   \*   \*   \*   \*   \*

(2) *the amount of any damages received* (whether by suit or agreement and whether as lump sums or as periodic payments) *on account of personal injuries* or sickness. . . .

26 U.S.C. § 104 (emphasis added).[1]

Treasury Regulation 1.104–1(c) defines "damages" in this context as "an amount received . . . through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution." 26 C.F.R. § 1.104–1(c) (1991). With the exception of punitive damage awards,[2] excludability under § 104(a)(2) and Treasury Regulation 1.104–1(c) turns solely on the nature of

the underlying claim, not the nature of the injury. *United States v. Burke,* —— U.S. ——, 112 S.Ct. 1867, 119 L.Ed.2d 34, 44 (1992), *approving analysis in Burke v. United States,* 929 F.2d 1119, 1121 (6th Cir.1991). If the underlying claim sounds in tort, that is " 'the beginning and the end of the inquiry.' " *Burke,* 929 F.2d at 1121 (quoting *Threlkeld v. Comm'r,* 87 T.C. 1294, 1299, 1986 WL 22061 (1986), *aff'd,* 848 F.2d 81 (6th Cir.1988)); *Horton v. Comm'r,* 100 T.C. 93, 96, 1993 WL 28557 (1993) (citing *Burke* ). The entire "amount received" through prosecution of that claim is excludable, regardless of whether it includes compensation for nonphysical or economic losses, and *regardless of whether it includes elements of damages otherwise taxable.*[3]

■ The exclusion from income under § 104(a)(2) thus is broad, as are the other exclusions in § 104 for "[c]ompensation for injuries or sickness." For example, the exemption for "amounts received" through accident or health insurance for personal injuries or sickness (26 U.S.C. § 104(a)(3)) excludes from income *all* amounts received under accident or health insurance policies, even if they are in excess of the insured's actual medical expenses (Rev.Rul. 58–602, 1958–2 C.B. 109), and even if they include items otherwise taxable, such as replacement income (Rev. Rul. 58–90, 1958–1 C.B. 88). *See* 4 U.S. Tax Rep. ¶ 1044.03.[4]

---

1. Section 104, entitled "Compensation for injuries or sickness," also excludes from gross income amounts received for personal injuries or sickness under worker's compensation programs (§ 104(a)(1)), accident or health insurance (§ 104(a)(3)), and certain federal pension programs (§ 104(a)(4)).

2. Punitive damage awards are excludable only if the underlying injury is physical. 26 U.S.C. § 104(a)(2) (after 1989 amendment). *See* 1989 Omnibus Budget Reconciliation Act, P.L. 101–239, 12/19/89 (applicable to punitive damage awards received after 7/10/89).

3. *Horton v. Comm'r,* 100 T.C. 93, 95–6, 1993 WL 28557 (1993) (citing *Burke* ) (punitive damages excludable); *Downey v. Comm'r,* 97 T.C. 150, 160, 1991 WL 140900 (1991) (§ 104(a)(2) excludes from income all damages that substitute for items otherwise taxable or would produce taxable benefit). *See Redfield v. Ins. Co. of North*

*America,* 940 F.2d 542, 545 (9th Cir.1991) (economic damages received in ADEA case fully excludable, even though based on otherwise taxable lost wages) (adopting view taken by Third and Sixth Circuits in *Pistillo v. Comm'r,* 912 F.2d 145 (6th Cir.1990) and *Rickel v. Comm'r,* 900 F.2d 655 (3d Cir.1990)); *Threlkeld,* 848 F.2d at 84 (all amounts received in compensation of nonphysical personal injury, like amounts received for physical injury, excludable under § 104(a)(2)); *Roemer v. C.I.R.,* 716 F.2d 693, 697 (9th Cir.1983) (Tax Court erred in requiring amounts received for nonphysical injuries in defamation action allocated into taxable and nontaxable components).

4. However, the general exclusion in § 104(a)(3) does not apply to amounts received by an employee to the extent the amounts are either attributable to employer contributions not includable in the employee's gross income, or paid by the employer. *See* 4 U.S. Tax Rep. ¶ 1044.03.

The Tenth Circuit recognizes the breadth of the exclusion in § 104(a)(2). Once it is determined an underlying claim sounds in tort, the Tenth Circuit has ruled the entire amount awarded as damages for personal injuries is excluded under § 104(a)(2). *Wulf v. City of Wichita*, 883 F.2d 842, 873 (10th Cir.1989). In *Wulf*, the court of appeals reversed the trial court's addition of $80,-821.97 to a damages award for "taxes due," finding the trial court had erroneously assumed the damages award, which represented back pay, was taxable. Because the underlying claim—i.e. termination of plaintiff's employment deprived him of his First Amendment rights in contravention of 42 U.S.C. § 1983—sounded in tort, the Tenth Circuit found the entire damages award excludable from income under § 104(a)(2). *Id.*

> The award of back pay compensated [plaintiff] for the economic injury resulting from the denial of his constitutional rights. It is still an award of damages 'on account of personal injuries,' and is therefore not taxable.

*Id.* (citing *Bent v. Comm'r*, 835 F.2d 67, 71 (3d Cir.1987) (rejecting Commissioner's argument that portion of settlement based on lost wages not excludable from income under § 104(a)(2) because wages otherwise taxable)).

■ Applying this analysis to the case before me, I first look to the nature of the underlying claim. There is no dispute the Brabsons' suit against the City of Colorado Springs and the Stratmoor water and sanitation districts was a legal action based upon tort. Nor is there a dispute that the prejudgment interest at issue was part of the "amount received" by the Brabsons through prosecution of that action. *See* Treasury Reg. 1.104–1(c).

This alone should be the end of the inquiry. *Kovacs v. Comm'r*, 100 T.C. 124, 145–46, 1993 WL 46512 (1993) (Beghe, J. dissenting) (citing *Burke, supra*, — U.S. —, 112 S.Ct. 1867, 119 L.Ed.2d 34; *Downey, supra*, 97 T.C. at 160–63; *Horton, supra*, 100 T.C. at 96). The United States, however, argues the relevant inquiry is not whether the prejudgment interest was an "amount received" by the Brabsons through prosecution of Mrs.

Brabson's personal injury action, but whether it constitutes "damages" as contemplated in § 104(a)(2). Def.'s Mot. Dismiss at 7. The answer to this question, I find, requires consideration of Colorado personal injury law and a determination of how Colorado views prejudgment interest awarded under C.R.S. § 13–21–101.

A. *Colorado law determines what "damages" are available in Colorado personal injury actions.*

Because there is no general federal common law of torts (*Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938)) nor controlling definitions in the Tax Code, courts interpreting § 104(a)(2) look to state law. *Roemer v. Comm'r*, 716 F.2d at 697, *citing United States v. Mitchell*, 403 U.S. 190, 197, 91 S.Ct. 1763, 1767, 29 L.Ed.2d 406 (1971) (quoting *Burnet v. Harmel*, 287 U.S. 103, 110, 53 S.Ct. 74, 77, 77 L.Ed. 199 (1932) (state law creates legal interests, federal law determines when and how to tax)). Consideration of state law is not limited to determining whether a particular action sounds in tort; courts also look to state law to determine the types of "damages" available to the plaintiff in such an action.

Where, under state law, the damages redress the personal injury suffered by the plaintiff, they are excludable under § 104(a)(2). *See Roemer*, 716 F.2d at 700 (all compensatory damages available under California law for defamation excludable from income under § 104(a)(2)); *Horton v. Comm'r*, 100 T.C. 93, 100 (1993) (in Kentucky, punitive damages serve "both to compensate the injured party and punish the wrongdoer" and are excludable under § 104(a)(2)); *Burford v. United States*, 642 F.Supp. 635, 638, n. 5 (N.D.Ala.1986) (though labeled "punitive," Alabama wrongful death awards compensate plaintiff for her loss and thus are excludable from income), *discussed in Miller, supra*, 914 F.2d at 591 (in contrast to *Burford* court's examination of Alabama wrongful death law, examination of Maryland law indicates punitive damages in Maryland defamation action are not awarded compensatory).

Where, under relevant state law, damages are received for some other purpose, they are not excludable under § 104(a)(2). *See Reese v. United States,* 24 F.3d 228, 232 (Federal Circuit concluded punitive damage awards for violation of the District of Columbia Human Rights Act are to deter and punish defendant, not to compensate plaintiff, and punitive damage award not excludable under § 104(a)(2)); *C.I.R. v. Miller,* 914 F.2d at 589 (Fourth Circuit looked to Maryland law to conclude punitive damages are "inherently different" from compensatory damages and therefore not excludable under § 104(a)(2)); *Wesson v. United States,* 843 F.Supp. 1119, 1122 (S.D.Miss.1994) (same, applying Mississippi law); *O'Gilvie v. United States,* 1992 WL 123806 at *1 (D.Kan. May 26, 1992) (same, looking to Kansas law).

■ The question to be decided, then, is whether prejudgment interest is an element of available compensatory damages in Colorado personal injury actions.

B. *Under Colorado law, prejudgment interest on personal injury awards is an element of compensatory damages, not interest.*

In determining what constitutes "damages" under state law for the purposes of § 104(a)(2), courts are not bound by labels. *See, e.g., Burford v. United States,* 642 F.Supp. at 638 (N.D.Ala.1986) (relying on Alabama caselaw to deconstruct "punitive damages" label attached to wrongful death awards under Alabama statute), *analysis approved C.I.R. v. Miller,* 914 F.2d at 591 (4th Cir.1989). Thus, I look to Colorado caselaw interpreting C.R.S. § 13–21–101 to determine whether prejudgment interest is an element of damages for personal injury, rather than rely on the fact it is called "interest."

Under Colorado law, "prejudgment interest is an element of compensatory damages in actions for personal injuries, awarded to compensate the plaintiff for the time value of the award eventually obtained against the tortfeasor." *Allstate Ins. Co. v. Starke,* 797 P.2d 14, 19 (Colo.1990) (citing, *inter alia, Houser v. Eckhardt,* 35 Colo.App. 155, 532 P.2d 54, 57 (1975), *aff'd on other grounds sub nom. Security Ins. Co. v. Houser,* 191 Colo. 189, 552 P.2d 308 (1976)). It is "in the nature of another item of damages" wholly distinct from postjudgment interest. *Houser,* 532 P.2d at 57 (citing *Lineman v. Schmid,* 32 Cal.2d 204, 195 P.2d 408 (1948) and *Turcotte v. De Witt,* 333 Mass. 389, 131 N.E.2d 195 (1956)).

The difference between prejudgment, or moratory,[5] interest and conventional interest is fundamental. The obligation to pay prejudgment interest is tied inextricably to the concept of fault. Before liability is fixed, prejudgment interest is part of plaintiff's damage demand on a contingent and unliquidated claim and accrues until judgment enters against the defendant. *Starke,* 797 P.2d at 19; *Houser,* 532 P.2d at 57. Once defendant's liability in tort is fixed, his liability for the lost time-value of plaintiff's award also becomes fixed. Prejudgment interest is awarded to compensate for this loss and becomes a "part" of plaintiff's lump-sum damages. C.R.S. § 13–21–101; *see Turcotte,* 131 N.E.2d at 197 (damages is the word expressing in dollars and cents the injury sustained by a personal injury plaintiff; it includes *both* the original damage and whatever interest is added to make the plaintiff whole).

The obligation to pay postjudgment interest, by contrast, is not directly tied to the concept of fault. Like conventional interest, postjudgment interest accrues on a fixed indebtedness. *See Old Colony Railroad Co. v. Comm'r,* 284 U.S. 552, 560, 52 S.Ct. 211, 213–14, 76 L.Ed. 484 (1932). It compensates a judgment creditor for the debtor's use, or the creditor's forbearance in demanding, payment of an amount fixed and owed by the

---

5. In *Starke,* the Colorado Supreme Court found C.R.S. § 13–21–101 "codifies the moratory interest principle in those tort actions for personal injuries to which [the statute] applies." 797 P.2d at 19. Moratory interest, or interest as damages, has been allowed in Colorado for over one hundred years. *Id.* at 18 (citations omitted). As viewed by the Colorado Supreme Court

[t]he term 'moratory *interest*' is misleading, for where allowed it is awarded not as interest as such but as damages.

797 P.2d at 18 (citing *Bankers Trust Co. v. Int'l Trust Co.,* 113 P.2d 656, 665 (Colo.1941)) (emphasis original).

debtor. *See Deputy v. du Pont,* 308 U.S. 488, 498, 60 S.Ct. 363, 368–69, 84 L.Ed. 416 (1940). It is the equivalent of "rent" for the use of funds due and owing to the plaintiff. *See Dickman v. Comm'r,* 465 U.S. 330, 339, 104 S.Ct. 1086, 1092, 79 L.Ed.2d 343 (1984). Prejudgment interest does not fit into these definitions of interest because at the time it accrues, plaintiff is not a creditor and there is no debt fixed or owed by the defendant to him. Plaintiff can neither demand, nor forbear from demanding, payment.

I conclude as a matter of Colorado law, prejudgment interest is an element of damages compensating the personal injury plaintiff for all injuries caused by defendant's tortious conduct, including the lost the time value of his damages award. It is not "interest" as that term is defined and generally understood.

The United States argues a determination that prejudgment interest is "damages" under Colorado law does not support a conclusion that prejudgment interest is "damages" for the purpose of § 104(a)(2). Mot. Dismiss Amended Complaint at 11, *citing Aames v. Comm'r,* 94 T.C. 189, 192–93, 1990 WL 17276 (1990). Based on my analysis in Section II(A), *supra,* I find this argument unpersuasive. The Internal Revenue Code and its regulations are vague at best as to what constitutes an "amount received (other than workmen's compensation) through prosecution of a legal suit or action based upon tort or tort type rights" (Treas.Reg. § 1.104–1(c)). Under the principle set forth in *Erie,* I must look to Colorado law to determine the type and nature of "damages" available in Colorado personal injury actions.

Though not entirely clear, the *Aames* opinion upon which the United States relies appears to concern the excludability under § 104(a)(2) of postjudgment, rather than prejudgment, interest. *See* 94 T.C. at 190 (interest awarded from date jury verdict against attorney reduced by trial judge to the date reduced verdict affirmed by court of appeals). Moreover, none of the cases cited in *Aames* involved the taxation of personal injury damage awards or § 104(a)(2). *E.g., Wheeler v. Comm'r,* 58 T.C. 459, 1972 WL 2577 (1972) (excludability of damages awarded in breach of contract action); *Kieselbach v. Comm'r,* 317 U.S. 399, 63 S.Ct. 303, 87 L.Ed. 358 (1943) (excludability of interest on condemnation award under return of capital theory)[6]. Because neither breach of contract damages nor condemnation awards fall within the exclusion for personal injury damages in § 104(a)(2), I find the *Aames's* analysis unenlightening and undeterminative of the question before me.

The United States also demurs to the *Houser–Starke* line of Colorado cases as irrelevant because they involve the interpretation of coverage issues under liability insurance policies.[7] Mot. Dismiss Amended Complaint at 11–12. I disagree. The caselaw forming the basis for the Colorado Court of Appeals' analysis in *Houser,* adopted by the Colorado Supreme Court in *Starke,* did not involve insurance policies or coverage issues. *See Turcotte v. De Witt,* 333 Mass. 389, 131 N.E.2d 195 (1955) (wrongful death action); *Lineman v. Schmid,* 32 Cal.2d 204, 195 P.2d

---

**6.** Cases in which interest on condemnation awards is deemed includable in income are inapposite. The interest portion of a condemnation award is expressly defined as "interest" in Treasury Regulation § 1.61–7(a):

Interest income includes interest on savings or other bank deposits; interest on coupon bonds; interest on an open account, a promissory note, a mortgage, or a corporate bond or debenture; the interest portion of a condemnation award; usurious interest (unless by State law it is automatically converted to a payment on the principal); interest on legacies; interest on life insurance proceeds; interest on life insurance proceeds held under an agreement to pay interest thereon; and interest on refunds of [f]ederal taxes.

26 C.F.R. § 1.61–6 (1991). If probative of anything, the inclusion on this list of interest on condemnation awards and the omission of prejudgment interest on personal injury awards suggests the latter is *not* "interest" within the meaning of § 61 of the Tax Code.

**7.** In both *Houser* and *Starke,* statutory prejudgment interest was deemed to be an element of damages as opposed to interest and therefore subject to insurance policy limits for bodily injuries. It is interesting to note the words "demur" and "moratory" both derive from the latin *morari,* "to delay." Webster's Third New Int'l Dictionary (1976 ed.)

408 (1948) (breach of contract action). Further, Colorado's recognition of moratory interest principles, codified in personal injury actions by C.R.S. § 13–21–101, is not limited to insurance policy coverage issues. *See generally* Tredennick & Cairns, *Collecting Pre- and Post–Judgment Interest in Colorado: A Primer,* 15 Colo.Law. 753 (1986).

Looking, as I must, to state law to determine the nature of prejudgment interest, I conclude it is an element of "damages" available to plaintiffs "on account of personal injury or sickness" and thus excludable from income under § 104(a)(2).[8]

### C. *Kovacs and its progeny.*

I am aware my conclusion in this case is different from that reached by the United States Tax Court in *Kovacs v. Comm'r,* 100 T.C. 124, 1993 WL 46512 (1993), *aff'd in unpublished disposition,* 1994 WL 253035 (6th Cir. June 9, 1994) and its progeny. *E.g., Rice v. United States,* 834 F.Supp. 1241, 1245 (E.D.Cal.1993) (relying on *Kovacs*); *Burns v. C.I.R.,* T.C.Memo. 1994–284, 1994 WL 273928 (June 21, 1994) (same). In *Kovacs,* the Tax Court cited a disinclination to interpret the term damages in § 104(a)(2) "broadly" or "overrule" previous opinions and concluded mandatory statutory prejudgment interest awarded under a Michigan statute fell outside the scope of § 104(a)(2) and was taxable "interest" income within the meaning of § 61(a)(4). 100 T.C. at 127–28 (construing M.C.L. § 600.6013 (1987)). Because my contrary conclusion requires neither a broadening of the term "damages" nor the overruling of pre-*Kovacs* opinions, I decline to follow the *Kovacs* majority and adopt instead the analysis of Judge Beghe in dissent.

1. *Pre–Kovacs Tax Court and IRS interpretations of § 104(a)(2) and its predecessors.*

The conclusion I reach in the instant case conforms, rather than conflicts, with federal tax law in general and the Tax Court's view of § 104(a)(2) in particular. In an opinion issued 15 days before *Kovacs,* the Tax Court reaffirmed the analysis to be applied in questions of excludability under § 104(a)(2). *See Horton v. C.I.R.,* 100 T.C. 93, 95–7 (February 9, 1993) (rejecting Fourth Circuit's limited view of excludability under § 104(a)(2) with respect to punitive damages *Commissioner v. Miller,* 914 F.2d 586 (1990)). Relying on its opinions in *Downey* and *Miller,* and the United States Supreme Court's opinion in *Burke,* the Tax Court stated:

> The beginning and end of the inquiry should be whether the damages were paid on account of 'personal injuries.' This inquiry is answered by determining the nature of the underlying claim. Once the nature of the underlying claim is established as one for personal injury, any *damages* received on account of that claim . . . are excludable.

*Horton,* 100 T.C. at 95–96 (emphasis added).

The Tax Court's analysis of what is meant by the word "damages" in this context is illuminating:

> Whether the damages paid to the tort victim reflect a substitute for amounts or items otherwise taxable or a substitute for amounts or items to be enjoyed without a tax consequence is irrelevant. Thus, section 104(a)(2) permits the exclusion of damages that are a substitute for the enjoyment of a whole body or of freedom from distress. . . . Likewise, the section allows exclusion of damages that are a substitute for *amounts* or *items* that *otherwise would be taxable* or would potentially produce taxable benefit, such as income lost as a result of a personal injury or amounts reflecting injury to a person's business or professional reputation.

*Horton,* 100 T.C. at 96 n. 4, *quoting Downey v. Comm'r,* 97 T.C. at 163–64 (emphasis add-

---

**8.** Under my analysis, tax treatment of personal injury prejudgment interest under § 104(a)(2) may vary from state to state. This fact alone, however, is immaterial. As has long been a fundamental principal in tax law, the constitutional requirement of uniformity is not intrinsic, but geographic. *Poe v. Seaborn,* 282 U.S. 101, 117, 51 S.Ct. 58, 61, 75 L.Ed. 239 (1930) (citations omitted).

Differences in state law, which may bring a person within or without the category designated by Congress as taxable, may not be read into the Revenue Act to spell out a lack of uniformity. *Id.* at 118 (citation omitted).

ed). The analysis is clear: when items otherwise taxable are awarded *as damages* for personal injuries, their character as "otherwise taxable" becomes irrelevant and they are excluded from income. Thus, even if prejudgment interest were "otherwise taxable," once it is awarded as damages for personal injuries, that fact becomes irrelevant and it is excludable from income.

In reaching its conclusion in *Kovacs,* the majority relies heavily on the 1933 Board of Tax Appeals decision in *Riddle v. Comm'r,* 27 B.T.A. 1339. The Tax Court credits *Riddle* with having articulated the "longstanding" judicial view that prejudgment interest is includable in gross income. *See* 100 T.C. at 129–30. As Judge Beghe points out in his dissent in *Kovacs,* the "longstanding" judicial view of prejudgment interest is, if anything, contrary to the majority's interpretation of *Riddle. Id.* at 155–56 (Beghe, J. dissenting).

*Riddle,* like *Aames,* concerned the taxability of *post* judgment, not prejudgment, interest.[9] The Board of Tax Appeals' conclusion that *post* judgment interest is "separately computed and specifically designated interest" and therefore includable in income, 27 B.T.A. at 1341, simply does not support the *Kovacs* majority's conclusion that prejudgment interest is includable in income. The more relevant case for determining the "longstanding" view of prejudgment interest is one decided three years after *Riddle, NV Koninklijke Hollandische Lloyd (Royal Holland Lloyd) v. Comm'r,* 34 B.T.A. 830, 835 (1936), in which the Board of Tax Appeals explicitly distinguished "separable" items of interest includable in income from prejudgment interest awarded as damages.

*Royal Holland* involved the unlawful detention by the United States of the Royal Holland Lloyd vessel Zeelandia from October 22, 1917 to March 21, 1918. The Lloyd asserted a claim against the United States for damages arising out of the United States' refusal to let the Zeelandia leave, and tried for several years to resolve the matter through diplomatic channels. 34 B.T.A. at 831. On March 3, 1927, Congress enacted the Act for the Relief of the Royal Holland Lloyd, sustaining the Lloyd's claim and permitting it to sue the United States for damages in the Court of Claims. *Id.* at 831–32.

On December 7, 1931, the Court of Claims found for the Lloyd, finding it was entitled to recover $446,826.22, together with interest. On July 18, 1932, the United States issued a warrant in favor of the Lloyd in the amount of $532,356.95 in partial payment of the judgment of the Court of Claims. 34 B.T.A. at 832. This payment included $84,531.73 in interest. *Id.*

On May 24, 1933, the Collector of Internal Revenue sent a letter to the Lloyd in Amsterdam stating the Lloyd had realized taxable income for the year 1932 as a result of the Court of Claims' judgment. *Royal Holland,* 34 B.T.A. at 833. The Lloyd filed the requested return, but asserted no part of the court's judgment constituted taxable income. *Id.* The Commissioner assessed a deficiency, finding the Court of Claims' award, which included interest for the period of the detention through the date of judgment, was taxable income from sources within the United States pursuant to § 119(a)(4) of the Revenue Act of 1932 (now codified at 26 U.S.C. § 861). *Id.*

The Board of Tax Appeals disagreed. It determined the judgment was obtained "as just compensation for damages for the unlawful detention of the petitioner's property." 34 B.T.A. at 834. Specifically, the Board concluded none of the payment constituted taxable "interest" within the meaning of § 119 because, "under well established rule, the 'interest' was included in the judgment as part of just compensation for damages sus-

---

9. As Judge Beghe notes, *Riddle* concerned the taxability of postjudgment interest on a $15,000 award by the Mixed Claims Commission for personal injuries suffered in the sinking of the steamship Lusitania in 1915. *See Kovacs,* 100 T.C. at 154 (Beghe, J. dissenting) *discussing Riddle,* 27 B.T.A. at 1340. The interest had accrued from November 1, 1923, the date of the award, to 1928, when it was paid. *Riddle,* 27 B.T.A. at

1339. Under the law applicable to the Mixed Claims Commission at that time, interest was not allowable as damages from the time of loss, but only from the time the loss was fixed and liquidated by the Commission. *Id.* at 1340. The Board of Tax Appeals concluded the $3,422.61 in postjudgment interest was paid to and received by the taxpayer as interest *eo nomine* and was thus includable in gross income. *Id.* at 1341.

tained." *Id., citing Seaboard Air Line Railway v. United States,* 261 U.S. 299, 43 S.Ct. 354, 67 L.Ed. 664 (1923); *Brooks–Scanlon Corp. v. United States,* 265 U.S. 106, 44 S.Ct. 471, 68 L.Ed. 934 (1923); *Phelps v. United States,* 274 U.S. 341, 47 S.Ct. 611, 71 L.Ed. 1083 (1927).

> Just compensation for the damage so suffered requires that the party damaged be made whole. An integral part of a payment for such purpose is interest covering the period of detention. In such a case [interest] is merely a convenient method of measuring the amount of one of the factors of damage. *It is not a separable item of interest on an obligation.*

*Royal Holland,* 34 B.T.A. at 835 (emphasis added).

I find the Board's analysis in *Royal Holland* instructive on the question of whether prejudgment interest (or interest awarded as damages) is a "separable" item of interest for tax purposes. The Board concluded it was not, and I decline to read the earlier *Riddle* decision as the *Kovacs* majority does.

2. *"Interest is Interest".*

The *Kovacs* majority invokes the following syllogism to conclude prejudgment interest awarded as damages in personal injury actions is not "damages" excludable from income under § 104(a)(2): prejudgment interest is "interest"; "interest" is not "damages"; therefore prejudgment interest is not "damages" excludable from income under § 104(a)(2). *See* 100 T.C. at 128–29. The cornerstone of the majority's analysis, and the one without which it fails, is the conclusory maxim "interest is interest." This tautology withers under scrutiny, and I decline to follow it.

a. *The distinction between prejudgment and postjudgment interest.*

Although a time value of money element inheres in both prejudgment and postjudgment interest, there is a long history of legal precedent treating them differently. Prejudgment interest is viewed as a part of the damages received "on account" of the injury giving rise to a claim because it accrues while that claim is contingent, whereas

postjudgment interest is considered interest *eo nomine* because it accrues on an indebtedness fixed by final court order. *Kovacs,* 100 T.C. at 142 (Beghe, J. dissenting), *citing* McCormick, *Handbook on the Law of Damages,* § 50, at p. 205 (1935); Dobbs, *Law of Remedies,* § 3.5, at p. 164 (1973). There is a sharp distinction between the two: interest *eo nomine,* "conventional" or promised interest, is paid as a term of contract; prejudgment interest, or interest as damages, is not based on promise, but awarded as a matter of law as compensation for the withholding of money or compensation due. McCormick, *supra,* at 205.

Though ignored by the *Kovacs* majority, federal tax law recognizes this distinction. As an example, Judge Beghe points to tax cases dealing with prejudgment interest and the deduction under 26 U.S.C. § 163(a) for "interest paid or accrued ... on indebtedness." *Kovacs,* 100 T.C. at 143–44 (dissenting opinion). Under the analysis in these cases, prejudgment interest included in an award on a noncontractual claim is damages, and is not deductible by the payor as "interest" on indebtedness because there is no debtor-creditor relationship between the parties until judgment is entered. *Id., citing Midkiff v. Comm'r,* 96 T.C. 724, 734–35, 1991 WL 83269 (1991); *Bettendorf v. Comm'r,* 3 B.T.A. 378, 383–84 (1926); *Jordan v. Comm'r,* 60 T.C. 872, 881, 1973 WL 2571, *aff'd per curiam,* 514 F.2d 1209 (8th Cir. 1975). Only after judgment enters does a debt arise and "interest" accrue for the purposes of § 163(a). *Id., citing Bettendorf,* 3 B.T.A. at 382 (in fraud action, interest included in judgment as damages for the wrongful detention of money was damages, not "interest").

After *Kovacs,* then, prejudgment interest is "damages," not interest, for purposes of the deduction for interest under § 163(a); but it is "interest," not damages, for purposes of the exclusion from income under § 104(a)(2). The *Kovacs* majority provides no reasoned basis for this result and I find it anomalous. Federal income tax law long has recognized the distinction between pre- and postjudgment interest, treating only the latter as "interest" for tax purposes.

b. *"Interest" is not always "interest."*

The cornerstone of the *Kovacs* majority's analysis, i.e., "interest is interest," also ignores the Tax Court's own directive to "look beyond nomenclature" in determining whether an amount labelled "interest" is indeed "interest." *Albertson's, Inc. v. Comm'r,* 95 T.C. 415, 1990 WL 149185 (1990); *see Midkiff, supra,* 96 T.C. at 734 ("interest" label attached to 5% blight of summons damages is not determinative of federal tax consequences).

In *Albertson's,* the Tax Court undertook to determine whether amounts designated as "interest" in deferred compensation arrangements ("DCA's") between a corporate taxpayer and certain of its executive employees and board of director members were in fact "interest" deductible in the year accrued or "compensation" not deductible until paid. 95 T.C. at 420–21. Acknowledging a time-value of money element inhered in the amounts labelled "interest," the Tax Court nevertheless concluded these amounts were not "interest," but "compensation." *Id.* at 421–23. The following language from *Albertson's* reveals the gossamer of the *Kovacs* majority's analysis:

> In determining the effect of a transaction for income tax purposes, formalities such as nomenclature … [are] not controlling. [Citations omitted.] The important consideration is substance, not form. [Citations omitted.] The fact that certain amounts are *described* as interest by the parties and are *calculated* by applying a percentage rate per annum to some principal amount *does not mean that the amounts will be [treated] as interest for income tax purposes.* [Citation omitted.]

*Id.* at 422–23 (emphasis added).

The Tax Court then determined the amounts described as "interest" in the DCA's represented neither payments made by the taxpayer for the use of money "borrowed"; liabilities owed to the DCA participants for the "forbearance" of money whose payment had become due; nor "rent" for the use of funds because the DCA participants had no legal right to demand their payment as they accrued, and the taxpayer had no obligation to pay them. *Id.* at 421, 423 (citing *Old Colony, supra,* 284 U.S. at 560, 52 S.Ct. at 213–14; *Deputy v. du Pont, supra,* 308 U.S.

at 498, 60 S.Ct. at 368–69; and *Dickman, supra,* 465 U.S. at 339, 104 S.Ct. at 1092). Thus, it concluded, the amounts described as "interest" were not truly "interest," and could not be deducted from income under § 163. *Id.* at 423.

The *Kovacs* majority, however, engaged in no such analysis. Had it done so, it would have concluded mandatory statutory prejudgment interest, like the "interest" in *Albertson's,* is *not* "interest" for income tax purposes. Prejudgment interest is not a payment made by a personal injury defendant for use of money "borrowed"; a liability owed plaintiff for the "forbearance" of money whose payment had become due; or "rent" for the use of funds owned by the plaintiff because at the time it accrues, the personal injury plaintiff has no legal right to demand payment and defendant has no legal obligation to pay. *See Albertson's,* 95 T.C. at 423.

Instead, the Tax Court in *Kovacs* did precisely what it directed courts not to do in *Albertson's:* It looked to the Michigan prejudgment interest statute and concluded prejudgment interest is "interest" because it is called "interest" and is calculated separately by applying a percentage rate per annum to the principal amount of the plaintiff's damages award. *Kovacs,* 100 T.C. at 128–29. By elevating form over substance, the *Kovacs* majority arrived at a conclusion unsupported as a matter of law and logic.

3. *The exclusion of statutory prejudgment interest from income comports with congressional intent.*

Finally, I agree with the dissents of both Judge Beghe and Judge Halpern in *Kovacs* on the issue of congressional intent. In 1982, Congress amended § 104(a)(2) to clarify the exclusion for personal injury awards applies to amounts received as periodic payments, as well as those received in a lump-sum. 1982 Periodic Payment Settlement Act, P.L. 97–473, 1/14/83 (adding the language "whether by suit or agreement and whether as lump sums or as periodic payments"), *discussed in* 4 U.S. Tax Rep. ¶ 1044.02 (1994); *see Kovacs,* 100 T.C. at 134–37 (Halpern, J. dissenting), 100 T.C. at 151–53 (Beghe, J. dissenting).

The PPSA specifically was intended to codify the law as it existed in 1982. *Kovacs,*

100 T.C. at 135 (Halpern, J. dissenting) (citing S.Rept. 97–646 (1982), 1983–1 C.B. 514, 515 and H.Rept. 97–832 (1982)). In place at that time was a Revenue Ruling, in which the IRS stated a victim of personal injuries who received damages in periodic payments could exclude from income the entire amount of each payment under § 104(a)(2), not just its present value. Rev.Rul. 79–220, 1979–2 C.B. 74. This fact, coupled with Congress's expressed intent in the PPSA to treat personal injury damages the same under § 104(a)(2) regardless of whether received in periodic payments or a lump-sum, supports the conclusion that § 104(a)(2) is intended to exclude from income the entire personal injury damages award, including prejudgment interest. *Kovacs*, 100 T.C. at 136–37 (Halpern, J. dissenting), at 152–53 (Beghe, J. dissenting).

### III. *Conclusion*

Under Colorado law, mandatory statutory prejudgment interest awarded in personal injury actions is an element of compensatory damages, not interest. It is therefore excludable from income as "damages" received on account of personal injuries or sickness under § 104(a)(2) of the Tax Code. This conclusion comports with federal tax law as it existed before *Kovacs*. I find the Tax Court majority's analysis in *Kovacs* unpersuasive, and decline to follow it.